**In the Matter of DCA DEVELOPMENT CORPORATION, Debtor.**

**No. 73–152.**

United States District Court, D. Massachusetts.

June 15, 1973.

Hale & Dorr, Boston, Mass., for debtor.

Wasserman & Salter, Henry Friedman, Boston, Mass., for creditors.

## OPINION

FREEDMAN, District Judge.

DCA Development Corporation, hereinafter referred to as the debtor, has petitioned this Court for reorganization under Chapter X of the Bankruptcy Act. An involuntary petition in bankruptcy was filed against the debtor on February 1, 1973. On February 5, 1973, the debtor filed a petition for a Chapter XI arrangement. The referee in bankruptcy allowed the debtor to continue its business as debtor-in-possession under a supervisory receiver. The debtor was unable to effect a plan of arrangement under Chapter XI and has now brought the Chapter X petition along with a motion to amend its original arrangement petition to comply with the requirements of Chapter X. The creditors' committee has opposed the petition for reorganization and contends through its answer that the debtor's Chapter X petition is not filed in good faith in that it is unreasonable to expect that a plan of reorganization can be successfully effected. 11 U.S.C. §§ 541 and 546. On May 4, 1973, the Court held oral arguments on debtor's petition. An evidentiary hearing on the issue of good faith followed on June 1, 1973.

The only issue to be determined by the court is the question of debtor's good faith. Section 141 of the Bankruptcy Act, 11 U.S.C. § 541, provides:

"Upon the filing of a petition by a debtor, the judge shall enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith, or dismissing it if not so satisfied."

Section 146 of the Act, 11 U.S.C. § 546, defines good faith of which the pertinent part at issue in the case at bar, provides:

"Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—

(3) it is unreasonable to expect that a plan of reorganization can be effected."

The debtor, as the petitioner, has the burden of showing that his petition has been filed in good faith. Marine Harbor Properties Inc. v. Manufacturers Trust Co., 317 U.S. 78, 63 S. Ct. 93, 87 L.Ed. 64 (1942). The debtor must show that there exists a reasonable possibility of successful reorganization. See 6 Collier's on Bankruptcy ¶ 6.09, p. 1040 (14th ed. 1972).

The debtor is engaged in the manufacture and sale of ceramic tile and also renders management services to its subsidiaries which are in the housing construction business. At the evidentiary hearing, Samuel Perkins, the president of the debtor, suggested two methods by which the debtor could effect a plan of reorganization. The first method is to either sell or lease the debtor's tile plants to a third party. Only one Florida corporation, Building Materials International, has indicated an interest. However, this corporation has done simply that. It has made no offer to Mr. Perkins nor does he know when an offer might be forthcoming. Such a prospect for reorganization is purely visionary.

The second means of effecting a reorganization is to start up the now inoperative tile plants by infusing new capital into the debtor. Mr. Perkins has projected that in order to start up the Ironton, Ohio plant the debtor would need $641,000.00 extended over a three month period. A $55,000.00 profit is expected only after the fourth month of operation. Mr. Perkins has also made projections regarding the Florence, Alabama plant. This plant would require $1,041,000.00 over a three month period to begin operation. A projected $44,000.00 profit would be made after the fourth month. It is clear that the start-up of either plant requires substantial amounts of capital. Mr. Perkins contends that the value of the debtor is such that new capital can be readily obtained.

From all the evidence before it, the Court finds that the debtor's financial condition would not support the start-up and operation of the tile plants. The plants have been shut down since November of 1972. The debtor has no earnings and has incurred operating losses of $700,000.00, and the receiver indicates that costs to the debtor continue to mount without any hopes that the tide will turn in its favor. The debtor is in default in payment of the rentals due on his leased plants. Approximately $1,225,000.00 is owed the state and federal governments for taxes due. The First National Bank of Boston is a secured creditor of the debtor for $1,500,000.00. The unsecured creditors' claims amount to over $20,000,000.00.

The debtor does have certain assets such as inventory, real estate, and certain accounts receivable. However, Mr. Perkins' testimony indicated to the Court that the value of these assets is substantially less than those values appearing on the debtor's balance sheet. The tile inventory has been depleted through sales. Although the book value of the tile is $2,800,000.00, the only bulk offer to buy made to Perkins would net $200,000.00. The real estate is encumbered by substantial liens. The accounts receivable have been pledged to the First National Bank so these would not generate a new supply of capital to the debtor.

Perkins stated that the debtor has no commitment for financing and was unable to offer the Court any plans for obtaining the necessary financing to start up the plants. The president of the board of directors of the debtor expressed his opinion that there was no hope of obtaining funds. Mr. Perkins' inexperience in manufacturing tile also operates as a factor to preclude financing. The debtor could not obtain financing to effect the Chapter XI arrangement, and the Court does not find any reasons to expect that financing would be any easier under a Chapter X reorganization. The debtor cannot possibly make the Ohio plant operative since it simply does not have the capital nor does it have any prospects for obtaining the capital. The plan for the Alabama plant, which requires even larger amounts of money than the Ohio plant from everything before the Court, would be similarly doomed to failure.

The Court wishes to make it clear that if it could find any rational way to sift through the allegations and evidence and keep a business functioning and thereby employ hundreds of people, it would like nothing better. It also believes, that if the business could be in any shape or form reorganized to make it successful,

the creditors' committee would have jumped on the bandwagon instead of opposing the petition as vehemently as it has.

The Court therefore concludes that the debtor has not sustained its burden of proof with regard to good faith. After careful consideration of all the evidence before it, the Court finds that it is unreasonable to expect that a plan of reorganization can be effected and hence the petition is not filed in good faith. Accordingly, debtor's petition for a Chapter X reorganization is dismissed.