**In the Matter of DCA DEVELOPMENT CORPORATION et al., Debtors.**

**Petition of FRANCHI CONSTRUCTION CO., INC., Petitioner, Appellant.**

**No. 73–1262.**

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1973.

Decided Dec. 27, 1973.

Robert Robinson, Boston, Mass., with whom Widett & Widett, Boston, Mass., was on brief, for appellant.

Donald Forte, Jr., Boston, Mass., with whom Joseph W. Bartlett, and Ely, Bartlett, Brown & Proctor, Boston, Mass., were on brief, for Boston Financial Technology Group, Inc., appellee.

Hertz N. Henkoff, Boston, Mass., with whom Barron & Stadfeld, Boston, Mass., was on brief, for James N. Langan, etc., appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

This appeal arises out of proceedings for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. (1970). Appellant, an unsecured creditor[1] of debtor DCA Development Corporation (DCA), challenges a transfer of DCA assets that was approved by both the referee and district court. Appellant contends (1) that it was denied its right as a creditor to a fair hearing because of insufficient notice; (2) that the transfer, as approved, provided inadequate consideration to DCA and was not in the best interests of creditors; and (3) that the findings of fact in the referee's order were statutorily insufficient. We reject these contentions and affirm the validity of the transfer.

The factual background is as follows.[2] DCA filed a Chapter XI petition on February 5, 1973. At that time it had four categories of assets: (1) two tile manufacturing plants, inoperative since November 1972; (2) two wholly-owned subsidiaries, Development Corporation of America (Development) and DCA Builders, Inc. (Builders), both of which also petitioned for Chapter XI arrangements; (3) general partner interests in five limited partnerships engaged in housing projects; and (4) miscellaneous holdings of tile inventory, real estate and accounts receivables, much of which were depleted in value or subject to extensive liens and pledges.

This appeal concerns the general partner interests. With respect to each interest, DCA had executed development arrangements with the limited partnerships and then assigned the receivables (i. e., the limited partners' contributions) due under the agreements to its subsidiary, Development. The subsidiary in turn granted Newton-Waltham Bank & Trust Company (the Bank) a security interest in the receivables to

---

1. Appellant's claims against DCA exceed $1,000;000.

2. Additional background information can be found in In re DCA Dev. Corp., 360 F.Supp. 162 (D.Mass.1973), a separate decision by the district court arising from the same Chapter XI proceedings.

the extent of $1,447,000 owed by DCA to the Bank.

On April 12, 1973, DCA sought authority to engage in the following transaction: transfer four of its general partner interests, plus an option in the fifth, to Boston Financial Technology Group, Inc. (Boston Financial). According to DCA figures submitted to the referee, the four interests at that time were burdened by $1,330,200 in liabilities,[3] of which $694,200 was owed to Boston Financial.[4] The deal also called for Development to tranfer to Boston Financial the related receivables, valued at $2,393,200 but subject to the Bank's $1,447,000 security interest.[5] In addition, the Bank would release DCA from all claims and Boston Financial would pay Development $100,000, spread over six months.[6] At DCA's request the referee agreed to hold a hearing the next morning on the proposed transfer. Appellant and other creditors received notice at about 3 p. m. on April 12 of the hearing to be held at 11 a. m. April 13.

The witnesses at the April 13 hearing represented DCA, Boston Financial and the limited partners. All of them testified in favor of the transfer. The witnesses stated that DCA's cash reserves were so depleted that it could no longer take the steps necessary for government certification of the housing projects, all of which had been halted close to completion.[7] Without certification the limited partners would not be obligated to pay their contributions, which were the only meaningful assets left to DCA and its subsidiaries. Therefore, speedy transfer of the general partner interests to a more stable entity was deemed essential if the projects were to be completed and any value was to be left with DCA for the benefit of its creditors. This testimony was subject to vigorous cross-examination by counsel for the creditors.

Appellant's counsel attended the hearing and participated in the cross-examination. He also filed an answer (1) stating that appellant had insufficient time to prepare an adequate response or defense, (2) denying generally the allegations in the petition to transfer, (3) asserting inadequacy of consideration for the assets, and (4) alleging that Boston Financial and the Bank would receive preferential treatment and that the transfer was not in the best interests of the creditors. The referee adjourned the April 13 hearing without taking any action or setting a date for another hearing.

At 11 a. m. April 20, appellant was formally notified of a second hearing, this one to be held at 4 p. m. on the same day. In the intervening week, following meetings between the creditors' committee and Boston Financial, the transfer proposal was altered to increase

3. The DCA figures also listed $292,500 in liabilities attributable to the fifth general partner interest, on which Boston Financial would acquire an option.

4. These debts to Boston Financial were listed as "Commissions Due," arising from Boston Financial's work as syndicator of the four limited partnerships in which it would now acquire general partner interests. Boston Financial was not the syndicator of the fifth limited partnership. Counting other debts, DCA owed Boston Financial a total of $857,000 at the time of this proposal.

5. There was also $600,000 in receivables due in connection with the fifth limited partnership.

6. If Boston Financial chose to acquire the fifth general partnership interest as well,

the proposal would have increased the total consideration to $118,500.

7. Certification of the housing projects by the Department of Housing and Urban Development required their completion and the rental of 95% of their capacity. According to testimony by Samuel Perkins, DCA's president, construction had been halted short of completion on all projects for the three months preceding the hearing because DCA was unable to continue paying the contractors. Perkins said that DCA also lacked the funds to retain a real estate firm to carry out the leasing of the units upon completion. He estimated that an additional expenditure of $500,000 to $750,000 would be needed to complete the units and rent them so as to obtain the certification.

the cash consideration to Development to $285,000.[8] At this hearing Boston Financial representatives stated that unless the referee approved the transfer that day, they would have to withdraw the offer.[9] Appellant's counsel continued to object to the transfer and again claimed insufficient notice to prepare an adequate response. This time the referee approved the transfer, as amended, and the district court denied appellant's petition for review. On June 27, 1973, DCA was adjudicated bankrupt after failing to effect a plan of arrangement under Chapter XI.[10]

■ In seeking to unwind the transfer, appellant's principal contention is that it was denied a fair hearing below because of insufficient notice. The Bankruptcy Act generally grants the referee and district court considerable discretion on this matter. Bankruptcy Act § 313(2), 11 U.S.C. § 713(2) (1970), permits the sale of "any property" of a Chapter XI debtor "upon such notice as the court may prescribe." Similarly, Bankruptcy Act § 315, 11 U.S.C. § 715 (1970), provides that when not otherwise specified the court shall designate "the time within which

. . . notice shall be given." In short, these provisions merely require such notice and opportunity for a hearing as is reasonable and appropriate in each particular case. *See* In re Plaza Towers, Inc., 294 F.Supp. 714, 718 (E. D.La.1967) (Chapter X proceeding); *cf.* In re Wood & Henderson, 210 U.S. 246, 253, 28 S.Ct. 621, 52 L.Ed. 1046 (1908). This is nothing more than traditional Due Process Clause analysis. Gleeson v. Carr, 219 F.2d 64, 67 (9th Cir.), cert. denied, 350 U.S. 827, 76 S.Ct. 56, 100 L. Ed. 738, rehearing denied, 350 U.S. 897, 76 S.Ct. 149, 100 L.Ed. 789 (1955) (Chapter X proceeding). The court in each case must balance the individual's interest in adequate procedure against the overall interest of efficient, final resolution of claims. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313–314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The latter interest is particularly important in proceedings under the Bankruptcy Act, where delay can often result in diminution of corporate assets with no corresponding benefit to creditors. *See* In re Inter-City Trust, 295 F. 495, 497 (1st Cir.), cert. denied, 265 U. S. 589, 44 S.Ct. 635, 68 L.Ed. 1194 (1924).[11]

---

8. The revised proposal called for an additional $65,000 to Development if the fifth general partner interest were also transferred.

9. Boston Financial explained that it had acquired consents from the limited partners for its substitution in place of DCA as a general partner, but that such consents expired on May 1, 1973. It said that it was unwilling to assume the general partner interests, with their attendant liabilities, prior to May 1 unless the referee approved and the ten day period in which to petition the district court for review of his order had expired. *See* Bankruptcy Act §§ 39(c), 302, 11 U.S.C. §§ 67(c), 702 (1970).

10. We reject a contention made by the trustee in bankruptcy that, absent his consent, appellant lacks standing to appeal the referee's order. In Chapter XI proceedings, as in others governed by the Bankruptcy Act, any "aggrieved" party may appeal an order to this court. *See* Bankruptcy Act §§ 25(a), 302, 11 U.S.C. §§ 48(a), 702 (1970). An aggrieved party is one whose "property may be diminished, . . . burden in-

creased, or . . . rights detrimentally affected by the order sought to be reviewed." Klein v. Rancho Mont. De Oro, Inc., 263 F.2d 764, 771 (9th Cir. 1959). In the instant case, appellant claims to be aggrieved in two respects. First, it challenges the substantive merits of the transfer. Second, it protests an alleged deprivation of its procedural rights as a creditor in the hearings below. The second claim is most important with respect to the standing issue. It would be inequitable to cut off a creditor's claim to procedural due process simply because the trustee is satisfied with the substantive outcome of a Chapter XI transfer of assets. Assuming *arguendo* that the creditor was denied a meaningful opportunity to participate in the hearings, this denial could mean that the creditor had lost an opportunity to develop new evidence or to locate a better offer for the assets which in turn might have affected the trustee's satisfaction with the substantive merits of the approved transfer.

11. Under these flexible procedural standards, an "emergency" might justify no prior notice

■ Moreover, even where formal notice to affected parties is omitted or is insufficient, informal or constructive notice which provides them with the same opportunity for a fair hearing can satisfy the procedural requirements of the Bankruptcy Act. *See, e. g.,* Ferguson v. Bucks County Farms, Inc., 280 F.2d 739, 743 (3d Cir. 1960); Harris v. Capehart-Farnsworth Corp., 207 F.2d 512, 517 (8th Cir. 1953); Kattelman v. Madden, 88 F.2d 858, 863 (8th Cir. 1937); In re Eatsum Prods. Corp., 286 F. 447, 448–449 (S.D.Fla.1923).

■ In the instant case, it is clear that appellant received brief formal notice of both the April 13 and April 20 hearings: twenty hours for the first and five hours for the second. But it is also clear that appellant had one full week between the two hearings in which it could have prepared a defense or response to the transfer proposal. *See* Ferguson v. Bucks County Farms, Inc., *supra.*[12] Appellant concedes that it did nothing during that week, even though it was fully apprised at the April 13 hearing of the details of the proposal and the arguments being made in support of it. Appellant seeks to justify its inaction by claiming that the referee's failure at the first hearing to fix a date for the second one implied that no further hearings would be held. We do not think this was a reasonable inference. But even if appellant did not expect the referee to call another hearing, it should have begun immediately to seek new evidence against the proposal or a better offer elsewhere so that it could petition the referee on its own motion for another hearing. Instead, it remained idle, and now seeks the opportunity to do for the first time what it should have been doing earlier. In contrast to appellant's inaction, the creditors' committee took the opportunity during the week between hearings to meet with Boston Financial concerning the transfer proposal. These meetings apparently resulted in the increase in consideration from $100,000 to $285,000, after which the committee voiced its approval of the transfer to the referee. Counsel for appellant conceded at oral argument that he was aware of the creditors' committee meetings during the week between hearings but deliberately refrained from participating in them on orders from his client. Thus, appellant's inaction was not solely due to ignorance but involved a good measure of willfulness. On this set of facts, we hold that the notice accorded the appellant with respect to the transfer of assets was sufficient to satisfy the procedural requirements of the Bankruptcy Act. .

■ Having found that appellant's procedural rights were satisfied, it follows that we must affirm the referee's factual findings on the merits of the transfer unless they were clearly erroneous. The referee found that DCA was subject to extensive liabilities and unable to fulfill its responsibilities with respect to the general partner interests. He further found that the transfer of the interests to Boston Financial would relieve DCA of the connected liabilities and that the consideration to be paid Development for the receivables was "more than adequate." He therefore concluded that the transfer was in the best interests of the creditors. On the record before us, these findings are not clearly erroneous. Appellant does not really argue otherwise. Instead, it contends that if given the opportunity, it might have been able to add new evidence to the record that would indicate inadequacy of consideration. But appellant had that opportunity and simply failed to utilize it. *Cf.* Arkwright Mut. Ins. Co. v. Bargain City, U.S.A., Inc.,

---

at all to creditors with respect to a Chapter XI transfer of assets. *See* In re Whitman Center, Inc., 285 F.Supp. 199, 207 (C.D. Cal.1968). On the other hand, where time is not critical, notice of two days to creditors might be insufficient. *See* In re Penn

Cent. Transp. Co., 453 F.2d 875, 876 (3d Cir. 1971) (per curiam) (railroad reorganization proceeding).

12. In its brief, appellant states that seven, five, or even three days' notice would have been reasonable.

373 F.2d 701, 706 (3d Cir.), cert. denied, 389 U.S. 825, 88 S.Ct. 63, 19 L.Ed.2d 79 (1967).

 Finally, appellant challenges the transfer on the ground that the referee violated Fed.R.Civ.P. 52(a) by failing to include sufficiently detailed findings of fact in his April 20 order of approval. It acknowledges, however, that the referee included a sufficiently detailed set of findings in his certificate to the district court, thus insuring that the court had a complete understanding of the reasons behind the order. Appellant contends that a failure to set forth adequate findings in the order itself cannot be cured in a later certificate, but instead requires remand of the case to the referee. This per se approach has been adopted by one court. In re Woody, 248 F.Supp. 855, 866 (W.D.Mo.1966), modified in part on other grounds sub nom. Farmers Bank v. Julian, 383 F.2d 314 (8th Cir.), cert. denied, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967), reversed in part on other grounds sub nom. First Nat'l Bank v. Julian, 383 F.2d 329 (8th Cir. 1967). However, we cannot reconcile such a rigid rule with the purposes of the Bankruptcy Act, which require flexibility and efficiency. For example, in the instant case, if the referee had been compelled to draft an order containing detailed findings of fact, he might not have been able to issue the order on the 20th despite his finding that the offer by Boston Financial would be withdrawn after that date. Moreover, if we did remand, the referee presumably would only restate the findings now included in the certificate, so that nothing of substance would have been gained. It is, of course, of the utmost importance that the referee support his orders with adequately-stated findings of fact so that the courts can review them.[13] Ordinarily such findings should accompany the orders. However, we agree with the

Sixth Circuit that where, as here, findings of fact in the referee's certificate supplement those in his initial order so as to provide the district court with a complete understanding of his reasons, the requirements of Fed.R.Civ.P. 52(a) have been satisfied. *See* In re D.I.A. Sales Corp., 339 F.2d 175 (6th Cir. 1964); *cf.* In re Berman & Co., 343 F. 2d 125 (6th Cir. 1965).

Affirmed.

---

13. A second reason for requiring findings of fact is to enable parties that are unhappy with a result to know whether they have a basis for appeal. Here, however, appellant was not deterred from appealing the referee's order by the limited findings contained in the order. Therefore, there is no reason to reverse on that ground.