**Luis R. GONZALEZ–RUIZ and Ana Doris Gabriel–De Gonzalez, Debtors.**

**Luis R. Gonzalez–Ruiz and Doris Gabriel–De Gonzalez, Appellants,**

**v.**

**Doral Financial Corporation, Appellee.**

BAP No. PR 05–026.
Bankruptcy No. 04–01140–GAC.

United States Bankruptcy Appellate Panel of the First Circuit.

May 4, 2006.

Before FEENEY, BOROFF, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

## INTRODUCTION

Luis R. Gonzalez–Ruiz and Doris Gabriel–De Gonzalez (jointly, the "Debtors") appeal from two orders of the United States Bankruptcy Court for the District of Puerto Rico (the "bankruptcy court"): 1) an order, dated February 9, 2004, granting the emergency motion of Doral Financial Corporation ("Doral") for authority to proceed with a foreclosure sale of the Debtors' residence, granting Doral's motion to dismiss the Debtors' fourth Chapter 13 bankruptcy case, granting Doral *in rem* relief from the automatic stay imposed by 11 U.S.C. § 362(a), and barring the Debtors from filing another bankruptcy petition for one year; and 2) an order, dated March 9, 2005, denying in major part,[1] the Debtors' motion for reconsideration of the February 9, 2004 order (the "order denying reconsideration").

For the reasons set forth below, the Panel **AFFIRMS** the orders of the bankruptcy court.[2]

Juan M. Suarez Cobo, San Juan, PR, on brief for Appellants.

1. The order of February 9, 2004 was modified by the bankruptcy court only insofar as the period in which the Debtors were barred from filing a bankruptcy petition was reduced from one year to 180 days.

2. The Appellants/Debtors filed an appellate brief, but the Appellee/Doral did not. Nonetheless, the Panel heard oral argument from both parties, because the Panel had a number of concerns relating to the issues on appeal and the Panel believed that the proper disposition of this matter turned on the resolution of those concerns. At the conclusion of oral argument on January 26, 2006, the Panel was left with some questions about real estate foreclosure law in Puerto Rico, best answered by supplemental briefing by the parties. Counsel for the Appellants agreed to file his supplemental brief within ten days (by February 6, 2006) and counsel for the Appellee agreed to file his supplemental brief within seven days thereafter. But counsel for the Appellants did not file his supplemental brief until February 10, 2006, by facsimile transmission. And counsel for the Appellees did not file his response until March 15, 2006, also by facsimile transmission. Facsimile filings are not permitted under our local rules, except under limited circumstances not here present. See 1st Cir. BAP R. 8008–1(d). More important, the Appellants filed their supplemental brief four days late, and the Appellee filed its supplemental brief approximately thirty days late. Neither party extended the Panel the courtesy of requesting leave to file the respective supplemental briefs after the applicable deadlines. Fortunately for the parties, however, this Panel has more respect for the proper outcome of this appeal than

## JURISDICTION

◼ A bankruptcy appellate panel is bound to determine its jurisdiction before proceeding to the merits of an appeal even if the issue of its jurisdiction is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order dismissing a Chapter 13 case is a final, appealable order. *See Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493, 505 (1st Cir. BAP 2005).

## STANDARD OF REVIEW

◼ Appellate courts generally apply the clearly erroneous standard to findings of fact and apply the *de novo* standard of review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994). A bankruptcy court's determination of a debtor's intent is a factual finding subject to review for clear error. *Gannett v. Carp (In re Carp)*, 340 F.3d 15, 25 (1st Cir.2003).

◼ A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 571 (1st Cir. BAP 2002); *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 830 (1st Cir. BAP 1999). If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504.

## STATEMENT OF FACTS

The matter before the Panel arises out a twelve-year dispute between the Debtors and their mortgage lender, Doral. The Debtors have commenced four separate bankruptcy cases in an attempt to save their residence located in Toa Baja, Puerto Rico.

### A. *The First and Second Bankruptcy Cases*

On April 5, 1994, the Debtors, with the assistance of counsel, filed their first bankruptcy petition[3] under Chapter 13 of the Bankruptcy Code (the "First Case").[4] The First Case was voluntarily dismissed by the Debtors on September 28, 1994, prior to confirmation of their Chapter 13 plan.

On December 16, 1994, less than three months after the First Case was dismissed, the Debtors filed a second Chapter

---

counsel for the Appellants or the Appellee apparently have for this Panel or the bankruptcy court below.

**3.** Case Number 94–01750.

**4.** All references to the "Bankruptcy Code" or to specific sections of the Bankruptcy Code are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.* (2005).

13 petition,[5] this time *pro se* (the "Second Case"). The bankruptcy court confirmed the Debtors' Chapter 13 plan on July 11, 1995. The Debtors failed, however, to comply with the plan provisions, and the bankruptcy court dismissed the Second Case on April 14, 1997.

### B. *The Third Case*

On March 14, 2000, the Debtors filed a third Chapter 13 petition,[6] again appearing *pro se* (the "Third Case"). On April 18, 2000, the Debtors filed their proposed Chapter 13 plan (the "Initial Plan"). On May 23, 2000, Attorney Ismael Herrero ("Herrero"), then practicing with the law firm of Dubon & Dubon, filed a proof of claim for Doral (the "Doral Proof of Claim"), together with a notice of appearance.

On its proof of claim, Doral listed a debt secured by a mortgage on the Debtors' residence. In box four, marked "Total Amount of Claim at Time Case Filed," the Doral Proof of Claim showed $31,073.76. Doral did not check the box on the form indicating that the claim included interest or other charges in addition to the principal. Next to box five of the form, where the claimant is required to indicate the amount of arrears and other charges, the words "see over" were written. On the reverse side of the form, Doral provided an itemization of its claim—$31,073.76 principal balance, $6,246.64 of accrued interest, $1,356.60 in late charges, $180.00 in advances and $4,050.00 in legal fees and related costs—totaling $42,907.00. However, separate from that itemization, but also on the reverse side, the Doral Proof of Claim indicated that the Debtors owed prepetition arrears of $40,579.89, plus additional sums for costs and attorneys' fees, and concluded by stating "a grand total of $46,696.54"—an amount $3,689.54 greater than the total of the itemized charges and $15,622.78 greater than the amount on the face of the Doral Proof of Claim. Despite these discrepancies, the bankruptcy court clerk entered the Doral Proof of Claim into the bankruptcy court's claims register as a secured claim in the amount of $31,073.76. The Debtors did not file an objection to the Doral Proof of Claim.

On June 14, 2000, the Debtors filed an amended plan (the "First Amended Plan"). There, they proposed to pay mortgage arrears owed to Doral in the sum of $21,681.00 and to also maintain regular monthly mortgage payments to Doral. The bankruptcy court scheduled a hearing on confirmation of the First Amended Plan for August 3, 2000 (the "Confirmation Hearing"). Notice of the Confirmation Hearing was sent to Attorney Herrero on behalf of Doral, and Doral did not file an objection to the Debtors' First Amended Plan.

On July 27, 2000, a week before the Confirmation Hearing, the Debtors moved for authority to deposit the sum of $38,745.00 with the Court. In their motion, the Debtors: 1) sought to pay $2,870 to the Chapter 13 trustee and $35,875 to Doral in full satisfaction of its claim and 2) requested a discharge of their remaining debts. Then, on July 31, 2000, three days prior to the Confirmation Hearing, the Debtors filed a second amended plan (the "Second Amended Plan"). In the Second Amended Plan, the Debtors proposed to pay $31,073.76 to Doral in full payment of its secured claim. The Second Amended Plan also provided for 100% payment of unsecured claims with interest in the amount of 6%. The Debtors certified that all creditors and parties in interest were

---

**5.** Case Number 94–06795.

**6.** Case Number 00–02924.

served with the Second Amended Plan and were given notice that objections to the Second Amended Plan were due within twenty days.

The Confirmation Hearing was held, as scheduled, on August 3, 2000. Attorney Herrero, counsel for Doral, did not appear at the hearing. According to the minutes of the Confirmation Hearing, the matter before the court was the *First* Amended Plan. But the bankruptcy judge actually confirmed the *terms* of the Second Amended Plan, which required the Debtors to make five payments of $100.00 and a lump sum payment of $39,245.00 (the "Confirmation Order"). The hearing minutes, however, refer to the First Amended Plan as the plan confirmed at the hearing.[7]

On August 9, 2000, nearly a week after the Confirmation Hearing, the bankruptcy court granted, subject to a 20-day objection period, the Debtors' previously filed motion for authority to deposit the sum of $38,745.00 with the Court. The clerk notified only the Debtors and the Chapter 13 trustee of the entry of that order. The Chapter 13 trustee subsequently filed a motion to withdraw those funds. The motion to withdraw the deposited funds, served on Attorney Herrero and to which he did not object, described the funds as necessary to complete the Debtors' Chapter 13 Plan,[8] which called for total payments of $39,745.00.

On October 6, 2000, Doral filed a motion for relief from the automatic stay (the "Motion for Relief") to proceed with foreclosure of its mortgage. In the Motion for Relief, Doral claimed a principal balance

due of $30,395.98, plus $495.04 in interest, $1,396.50 in late charges, $50.00 in advances and attorneys fees of 10% of the principal—a total of $33,435.58 ($13,260.96 less than the amount claimed on the face of the Doral Proof of Claim and $2,439.45 less than the amount to be paid to Doral from the Debtors' deposit with the Court). The Debtors received notice of the Motion for Relief and of the October 17, 2000 deadline for responses, but they failed to respond. Accordingly, on October 23, 2000, the bankruptcy court entered an order granting the Motion for Relief.

On June 6, 2001, Dubon & Dubon withdrew as attorneys for Doral, and indicated that the case would be referred to Attorney Herrero at P.O. Box 16681, San Juan, Puerto Rico. Approximately nine weeks later, on August 17, 2001, the Chapter 13 trustee filed a final report indicating that the Debtors' plan had been completed and that parties in interest had twenty days to object to the Debtors' discharge (the "Final Report"). The Final Report was properly served on Doral in care of Attorney Herrero at his new address. On August 24, 2001, the Chapter 13 trustee filed a report of unclaimed funds (the "Unclaimed Funds Report"), stating that a check in the amount of $31,073.76 was unclaimed by Doral. The Unclaimed Fund Report was not properly served on Doral; instead, it was sent Attorney Herrero's previous address at Dubon & Dubon.

On January 29, 2002, the Debtors, *pro se*, filed an emergency motion, insisting that their plan had been paid in full and

---

7. Further adding to the confusion, the *actual* order confirming the Second Amended Plan was not entered until January 30, 2002, eighteen months later, *nunc pro tunc* to August 3, 2000, and only the Debtors and Chapter 13 trustee were notified of the Confirmation Order.

8. Actually, the motion referred to a plan confirmed by order of June 14, 2000. Of course, there was no order of June 14, 2000—the Confirmation Order not having entered on the record until January 30, 2002 and then *nunc pro tunc* to August 3, 2000 with respect to the Second Amended Plan (filed July 29, 2000).

requesting that their discharge be entered.[9] In that motion, the Debtors also asserted that Doral had been erroneously granted relief from stay based on nonpayment, when they had in fact completed their payments under their Chapter 13 plan. The Debtors also indicated that a foreclosure sale of their residence was scheduled for February 21, 2002. The bankruptcy court docket does not reflect that the Debtors notified Doral of their emergency motion.

Responding to the Debtors' emergency motion, the bankruptcy court entered an order on January 30, 2002 vacating its order granting Doral's Motion for Relief to foreclose on the Debtors' residence (the "Order Vacating Relief from Stay"). In that order, the bankruptcy court also confirmed the Debtors' Second Amended Plan *nunc pro tunc* to August 3, 2000 and entered the Debtors' discharge. The bankruptcy court further authorized and directed Doral to collect the funds which the Debtors had deposited with the court prior to the allowance of Doral's Motion for Relief. Two weeks later, on February 13, 2002, the bankruptcy court entered an order discharging the Chapter 13 trustee and closing the Third Case.

On March 19, 2002, Attorney Herrero, now practicing at the law offices of Ismael H. Herrero III, P.S.C., filed a motion seeking reconsideration of the Order Vacating Relief from Stay. In the motion, Doral represented that it did not receive notice of either the Debtors' emergency motion requesting their discharge or the Order Vacating Relief from Stay. According to Doral, it was not aware of either the motion or the order until it received notice from the state court that its foreclosure sale was cancelled. Doral further complained that its claim was not properly treated under any of the Debtors' Chapter 13 plans, as Doral was owed $46,696.54, which Doral claimed was the total amount due as set forth in its proof of claim.

The Debtors filed an objection to Doral's motion for reconsideration as did the Chapter 13 trustee. The bankruptcy court held a hearing on Doral's motion for reconsideration on August 19, 2002, and took the matter under advisement. In a ten-page decision dated January 15, 2003 (though not docketed until January 24, 2003), the bankruptcy court reopened the Debtors' case, and found that, notwithstanding the various errors made, Doral had no notice that the Debtors' Second Amended Plan was to be considered at the August 3, 2000 Confirmation Hearing, nor should the Second Amended Plan have been confirmed consistent with Doral's due process rights, as the time for objecting to that plan had not then expired. As a result, the bankruptcy judge determined that the Confirmation Order was not binding on Doral, that Doral's lien survived the Debtors' discharge and that Doral was authorized to proceed to foreclosure against the Debtors' real estate.[10]

9. Although the docket does not reflect that there were any objections filed to the Debtors' previous request for discharge on August 10, 2000, no order relative to that request was ever entered.

10. It is to the bankruptcy court's great credit that it did not disclaim a role in the various errors that plagued the Third Case. Yet, although there were more than enough gaffes to be shared among the Debtors, Doral and the Chapter 13 trustee, only the Debtors suffered adverse consequences. Doral has foreclosed on the Debtors' residence notwithstanding its inexplicable inability to describe its own claim in a consistent and cogent fashion. We are unable, even now, to state with certainty the amount of the Doral claim, and we harbor some doubt as to whether Doral is any less confused. Of course, the Debtors failed to seek review of the orders in the Third Case and, consequently, those orders are not before us.

Of critical importance, the Debtors *did not appeal* the bankruptcy court's January 15, 2003 decision and order. Instead, on August 8, 2003, Mr. Gonzalez–Ruiz filed an application for payment of the unclaimed monies in the sum of $31,073.76, which represented the funds unclaimed by Doral.[11] And from March of 2003 to January of 2004, the debtors filed six motions for reconsideration of the January 15, 2003 decision and order. The bankruptcy court denied each of the motions for reconsideration. After the Debtors filed their sixth motion for reconsideration, the bankruptcy court ordered that no further motions related to its January 15, 2003 decision would be considered, and instructed the clerk to close the case. The case was closed on February 6, 2004.

## C. *The Fourth Case*

On February 5, 2004, the day before the Third Case was closed, the Debtors filed a fourth Chapter 13 petition,[12] *pro se,* as a skeleton petition without a plan or schedules of assets and liabilities (the "Fourth Case"). The bankruptcy orders in the Fourth Case have precipitated the instant appeal.

On Friday, February 6, 2004, Doral filed a pleading in the Fourth Case entitled "Urgent motion for emergency order authorizing the celebration of public sale scheduled for today, dismissal of bankruptcy and for imposition of sanctions" (the "Doral Motion"). There, Doral sought various forms of relief, including dismissal of the Debtors' Fourth Case, authorization of the foreclosure sale, sanctions, costs, expenses, attorneys fees, and "such further relief as is just and proper." Doral complained that the Fourth Case was filed on the eve of its foreclosure sale scheduled for February 6th, and was an abuse of the Bankruptcy Code, generally, and the bankruptcy court's orders in the Third Case, specifically. Doral noted that the Debtors had not appealed the bankruptcy court's orders in the Third Case and argued that allowing the Debtors to proceed with the Fourth case would be tantamount to permitting a late appeal of the orders in the Third Case.

That same day, the bankruptcy court, in an endorsement order on the Doral Motion, scheduled an emergency hearing for Monday, February 9th at 9:00 a.m. (the "Emergency Hearing"). The bankruptcy court further ordered that Doral's foreclosure sale be held in abeyance until the hearing. The effect of this order was that Doral was unable to conduct its foreclosure sale on February 6th as scheduled. As reflected in Doral's certificate of service, the Debtors were notified of the Emergency Hearing on Friday, February 6th.

Only Mr. Gonzalez–Ruiz appeared at the Emergency Hearing; Ms. Gabriel–De Gonzalez did not appear. Mr. Gonzalez–Ruiz admitted that he and his spouse had not made a payment on their mortgage to Doral in ten years. The bankruptcy court found that it had no option but to grant the Doral Motion and permit Doral to proceed with the public sale of the Debtors' real estate in light of: (1) the record of the Debtors' previous three bankruptcy cases; (2) the arguments presented at the Emergency Hearing, (3) the Debtors' failure to appeal the January 15, 2003 order in the Third Case; (4) the Debtors' six motions for reconsideration of that order, all of which had been denied; and (5) the filing of the Fourth Case one day before the Third Case was closed. The bankruptcy court also authorized Doral to proceed

---

11. The bankruptcy court allowed this motion by order dated October 10, 2003.

12. Case Number 04–01140.

*in rem* with respect to the Debtors' property. Further, the bankruptcy court dismissed the Debtors' Fourth Case and prohibited the Debtors from filing a new bankruptcy case for a period of one year.

On February 18, 2004, the Debtors filed a timely motion for reconsideration (the "Motion for Reconsideration"), appearing through counsel for the first time since the First Case. In that motion, the Debtors asserted that, relative to the Emergency Hearing, the bankruptcy court had denied them due process. The Debtors noted that they had not been represented by counsel, and claimed that Mr. Gonzalez–Ruiz's English language skills were poor. They complained that they had not received adequate notice of the hearing, effectively denying them the opportunity to obtain counsel. The Debtors further argued that the Court exceeded its authority in prohibiting them from filing a bankruptcy case for one year.

Doral filed an opposition to the Motion for Reconsideration. Doral noted that during the prior three bankruptcy cases the Debtors had never alleged a language barrier and had appeared before the court in those cases. Indeed, it observed that, in the Fourth Case, Mr. Gonzalez–Ruiz argued the Debtors' positions without exhibiting any language difficulties. Doral maintained that Debtors' decision to file their Fourth Case without the benefit of counsel had been voluntary. Moreover, while Doral maintained that the bankruptcy court had both the authority and discretion to prohibit another case filing for more than 180 days, it agreed not to contest a reduction of time within which the Debtors would be barred from refiling to 180 days. With respect to the emergency nature of the Emergency Hearing, Doral argued that the truncated notice was adequate and proper because the Fourth Case was commenced to circumvent the bankruptcy court's final orders in the Third Case. In any event, Doral contended that, because the Third Case was still open at the time of the Fourth Case was filed, the Debtors' Fourth Case had not been properly commenced.

In its Decision on the Motion for Reconsideration, dated March 9, 2005, the bankruptcy judge rejected the Debtors' arguments and denied their motion. The bankruptcy judge summarized the history of the various cases, noting the discharge in the Third Case of all of the Debtors' unsecured debts, the Debtors' admitted failure to make timely mortgage payments for ten years and Doral's attempt to foreclose its mortgage since 1992. The court concluded:

> The sole purpose of the present filing is to stay Doral's sale of the debtors' residence. The sale was authorized by the Court in the debtors' previous bankruptcy petition and the debtors failed to appeal. The Court concludes that the debtors may not obtain relief from the orders entered in the previous case by filing a new petition.

And with respect to the question of due process afforded to the Debtor, the bankruptcy judge further commented:

> The debtors contend that they were denied due process because they were not represented by counsel at the hearing on Doral's motion. The debtors, however, filed this petition *pro se*. While the Court does not recommend *pro se* filings, individuals are allowed to file petitions without the assistance of counsel. When they do so, they do so at their own peril. The debtors invoked the Court's jurisdiction. They certainly cannot claim now that they were somehow unfairly disadvantaged by their lack of counsel, such that the Court should set aside the offending order.

The Court granted the debtors a hearing on Doral's motion to afford the debtors due process. The hearing on Doral's motion was held on short notice because the debtors filed an eleventh hour petition to stop a foreclosure sale. The debtors received adequate notice of the hearing. They appeared on their own behalf and they were heard.

In his decision, however, the bankruptcy judge reduced the period during which the Debtors were prohibited from filing another bankruptcy case from one year to 180 days. This appeal of the February 9, 2004 order and the March 9, 2005 reconsideration order followed.

### DISCUSSION

#### A. Notice and Due Process

■ Proceedings in bankruptcy cases are subject to the due process requirements of the Fifth Amendment to the United States Constitution. *Aboody v. U.S. (In re Aboody)*, 223 B.R. 36, 40 (1st Cir. BAP 1998). The Supreme Court has repeatedly stated that in order to satisfy due process, notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections." *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ Section 102(1)(A) of the Bankruptcy Code defines the phrase, "after notice and a hearing" to be "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." *See* 11 U.S.C. § 102(1)(A). Obviously, therefore, the concept of "notice and a hearing" is a flexible one. *See Credit-Alliance Corp. v. Dunning-Ray Ins. Agency, Inc. (In re Blumer)*, 66 B.R. 109,

113 (9th Cir. BAP 1986), *aff'd*, 826 F.2d 1069 (9th Cir.1987); *see also* L. King, *Collier on Bankruptcy* ¶ 102.02, at 102–4–5 (15th ed. rev.2005) ("It is a concept of elastic design that may be shaped to conform to the exigency of the circumstances."). Notice does not need to be perfect; it must only be reasonable based upon the circumstances of the case. *See Sandoval*, 327 B.R. at 507; *In re DCA Dev. Corp.*, 489 F.2d 43, 47 (1st Cir.1973). Moreover, "notice and a hearing" does not necessarily require an evidentiary hearing. Where the parties do not request an evidentiary hearing or where the core facts are not disputed, the bankruptcy court is authorized to determine contested matters, such as a motion to dismiss, on the pleadings and arguments of the parties, drawing necessary inferences from the record. *In re Cabral*, 285 B.R. at 576–77. The bankruptcy judge has considerable, albeit not unlimited, discretion in determining if the notice and hearing requirement has been satisfied. *Finney v. Smith*, 141 B.R. 94, 101 (E.D.Va.1992), *aff'd*, 992 F.2d 43 (4th Cir.1993).

■ Applying these principles to this case, we find that the bankruptcy court did not abuse its discretion in reducing notice of the Emergency Hearing on the Doral Motion. Although the notice was short and the hearing swift, there was no denial of due process under the unique circumstances of this case, especially where the Fourth Case was essentially an effort by the Debtors to skirt the orders that had been entered in the Third Case. Moreover, although Doral's motion was not styled a request for relief from stay under § 362(d), there was no doubt that such a request was implicit in the motion. Nor was the abbreviated notice so short that the Debtors did not have an opportunity to be heard. Mr. Gonzalez was present at the hearing, and he presented his argu-

ments to the bankruptcy court. The transcript of the hearing amply demonstrates that his assertion of language problems, not raised in his prior cases, was obviously without merit. He presented no change in circumstances from those in the Third Case, and the bankruptcy judge did not abuse his discretion in declining to afford the Debtor a continuance of the hearing in light of the history of six motions for reconsideration filed in the Third Case. Nor was Ms. Gabriel–De Gonzalez's failure to appear at the hearing a ground for continuance. The bankruptcy court fully heard the arguments of her husband, who, under Puerto Rico law, could act on behalf of both of their interests in matters involving their joint affairs. *See Sandoval,* 327 B.R. at 509–10.

The bankruptcy court also gave the Debtors a second opportunity to be heard by holding a hearing on the Motion for Reconsideration. At that hearing, the Debtors were represented by counsel. There, the Debtors proffered no new evidence or error of law. They did not present any feasible plan of reorganization or offer adequate protection of the mortgagee's secured claim. It was clear to the bankruptcy court, and it is clear to this Panel, that the Fourth Case was simply an attempt to circumvent the bankruptcy court's orders in the Third Case. For these reasons, the Panel concludes that the Debtors were afforded notice and a hearing consistent with their due process rights, and the bankruptcy court did not err in holding an emergency hearing on the Doral Motion.

**B. Dismissal**

■■■ Section 1307(c) of the Bankruptcy Code provides that on request by a party-in-interest, after notice and a hearing, the court, *for cause,* may dismiss a case under Chapter 13 or convert the case to Chapter 7, whichever is in the best interest of the creditors and the estate. *See* 11 U.S.C. § 1307(c). The provision in effect in this case [13] specifically set forth ten circumstances constituting "cause" for which a court may convert or dismiss a case. *Id.* The list of grounds for dismissal or conversion found in § 1307 is not exhaustive; the court is not limited by the specific circumstances specifically mentioned there. Other factors warranting dismissal of a Chapter 13 case under § 1307 most often fall under the broad rubric of "lack of good faith"—often referred to as "bad faith." *See In re Cabral,* 285 B.R. at 573; *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1224 (9th Cir.1999); *Ho v. Dowell (In re Ho),* 274 B.R. 867, 877 (9th Cir. BAP 2002); *In re Dicey,* 312 B.R. 456, 458 (Bankr.D.N.H. 2004); *In re Fleury,* 294 B.R. 1, 5 (Bankr. D.Mass.2003); and *In re Virden,* 279 B.R. 401, 407 (Bankr.D.Mass.2002).

Courts use different approaches in order to determine whether a debtor has filed a bankruptcy petition in good faith. The majority of courts use a "totality of the circumstances test" to determine whether a debtor exercised good faith in filing a Chapter 13 petition for purposes of § 1309(c).[14] One of our panels took a

---

13. This Chapter 13 case was commenced on February 4, 2004, prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Title III, § 302, 119 Stat. 23 (2005).

14. *See, e.g., Leavitt,* 171 F.3d at 1224 (bad faith as cause for dismissal of Chapter 13 petition involves application of a totality of

the circumstances test); *Ho,* 274 B.R. at 879 ("[A]ny finding of § 1307(c) 'cause' would require a totality of the circumstances analysis followed by, if 'cause' is found, consideration of whether conversion or dismissal is in the best interest of creditors and the estate."); *In re Love,* 957 F.2d 1350, 1355 (7th Cir.1992) (bankruptcy courts must look at the totality of the circumstances on a case-by-case basis

slightly different approach in *Keach v. Boyajian (In re Keach),* 243 B.R. 851, 856 (1st Cir. BAP 2000), urging that a bankruptcy court's primary analysis should not be rooted in the debtor's prepetition history if the instant case demonstrates a debtor's simple honesty of purpose. Other panels and courts have criticized *Keach,*[15] and opted for the more expansive "totality of the circumstances" test. *Sullivan v. Solimini (In re Sullivan),* 326 B.R. 204, 210–11 (1st Cir. BAP 2005); *Dicey,* 312 B.R. 456; *Fleury,* 294 B.R. 1; *In re Scotten,* 281 B.R. 147, 149 (Bankr.D.Mass. 2002); and *Virden,* 279 B.R. 401.

In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) the debtor's accuracy in stating her debts and expenses, (2) the debtor's honesty in the bankruptcy process, including whether he or she has attempted to mislead the court and whether he or she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt

would be dischargeable in a Chapter 7, and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief.

*Cabral,* 285 B.R. at 573; *Dicey,* 312 B.R. at 459; *Virden,* 279 B.R. at 408.

 We need not here tarry on the differences, if any, between "good" or "bad" faith as viewed by the different camps. Applying either approach, it is clear that the bankruptcy court did not err in dismissing the Debtors' Fourth Case or in denying the Motion for Reconsideration. The Debtors' Fourth Case was filed before the Third Case was even closed. It was not filed in order to reorganize the Debtors' affairs, but to circumvent and undermine the bankruptcy court's orders in the Third Case, which the Debtors had failed to timely appeal. Filing a new bankruptcy case is not an alternative remedy to an appeal. It is not an honest approach to the bankruptcy process.

Based upon the Panel's review of the Debtors' prior cases, and the record in this case, the Panel finds that the bankruptcy court's order is well supported. The court was warranted in concluding that the Debtors' commencement of their Fourth Case was an attempt to avoid its prior

---

when determining good faith); *see also Mason v. Young (In re Young),* 237 F.3d 1168, 1174 (10th Cir.2001) (determination of good faith is made on a case-by-case basis, looking at the totality of the circumstances); *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996) (good faith Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances); *Solomon v. Cosby (In re Solomon),* 67 F.3d 1128 (4th Cir.1995) (affirming totality of the circumstances standard); *In re Schaitz,* 913 F.2d 452 (7th Cir.1990) (good faith analysis under Chapter 13 depends on the totality of the circumstances).

**15.** As was noted in *In re Hadsell,* 327 B.R. 520, 525 n. 8 (Bankr.D.Mass.2005):

The *Keach* decision has been criticized by some courts and commentators who have suggested that its holding limits a court's consideration of a debtor's postpetition

good faith only to the debtor's postpetition behavior. That criticism is misplaced and the *Keach* holding apparently misunderstood. A court's consideration of postpetition honesty of purpose is frequently informed by a debtor's prepetition conduct. *In re Keach,* 243 B.R. at 868–71. *Keach* stands for a more subtle proposition: that a court may not alter rights that a debtor has been granted by Congress (e.g., the right to make a new non-serial Chapter 13 filing; the right to pay a dividend unaffected by the nature of a debt which Congress has expressly declared dischargeable; and the right to then discharge that debt) by determining that those rights are unfair or inequitable based on the court's distaste for Congress' choices. *In re Keach,* 243 B.R. 851.

orders. The bankruptcy court properly viewed the Fourth Case as filed for an improper purpose and was justified in allowing Doral's request to dismiss it.

### C. *In Rem* Relief from Stay

Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization. . . .

11 U.S.C. § 362(d).

Moreover, § 362(f) of the Bankruptcy Code empowers the bankruptcy court to make emergency determinations on stay relief motions, either with or without a hearing. It provides:

> Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damages to the interest of any entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (b) or (e) of this section.

11 U.S.C. § 362(f).

An order granting *in rem* relief from stay is an appropriate remedy when a debtor or transferee of a debtor serially files bankruptcy petitions solely to invoke the automatic stay. *Laguna Assocs. Ltd. P'ship v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734 (6th Cir.1994). *In rem* relief renders the automatic stay in any future bankruptcy cases inapplicable to the lender's foreclosure of a particular *res*, regardless of who owns the property or files the case. *In re Lord*, 325 B.R. 121, 129 (Bankr. S.D.N.Y.2005). *In rem* relief thus addresses circumstances when the debtor is likely to invoke the automatic stay to frustrate foreclosure efforts through repeated filings, whether by the same or different persons. Rather than barring the debtor from filing a bankruptcy case in the future, the *in rem* remedy directly addresses abuse of the automatic stay by prospectively eliminating it with regard to the lender's collateral even if there are future bankruptcy cases. *Aurora Loan Servs. Inc. v. Amey (In re Amey)*, 314 B.R. 864, 866–67 (Bankr.N.D.Ga.2004).

Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to grant *in rem* relief in connection with granting relief from the stay under § 362(d) in circumstances where an ordinary stay relief order will not be effective to protect a secured lender's rights, as demonstrated by the prior history of the parties and the property. *Amey*, 314 B.R. at 869; *see also* 11 U.S.C. § 105(a). The remedy is imposed where there has been an abuse of the bankruptcy laws and of the automatic stay resulting from the filings of multiple bankruptcy cases. *Id.*[16]

The bankruptcy court did not err, legally or factually, in granting relief from

---

**16.** Various provisions of the current Bankruptcy Code avoid the possibility of abuse that the bankruptcy court here sought to avoid. *See, e.g.,* 11 U.S.C. § 362(c) (2006); *see also* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Title III, § 302, 119 Stat. 23 (2005). However, the amendments made to the Code in 2005 do not apply to this case, which was filed prior to the October 17, 2005 effective date.

stay to allow Doral to immediately proceed with its foreclosure sale, and in *sua sponte* granting *in rem* status to such relief. The allowance of relief from stay *in rem* was warranted by the Debtors' efforts to circumvent the bankruptcy court's prior orders. Moreover, the *in rem* aspect of the order was necessary and appropriate to ensure that the Debtors would not misuse the bankruptcy process again to defeat Doral's legitimate remedies. Section 105(a) specifically empowers the court to act *sua sponte* in appropriate circumstances. In its emergency motion to authorize the sale and to dismiss the case, Doral requested that "severe sanctions" be imposed on the Debtors for their abuse of the Bankruptcy Code, and for "such further relief as is just and proper." It was within the bankruptcy court's discretion to order *in rem* relief as a sanction.[17]

### D. Bar to Refiling

▆▆ Finally, the Debtors ask this Panel to review the bankruptcy court's order barring the Debtors from filing another bankruptcy petition for one year from the date of dismissal of their Fourth Case. However, the Panel need not rule on the issue as framed by the Debtors because in its order on the Debtors' motion for reconsideration, the bankruptcy court modified the time period, reducing the bar to refiling to 180 days. Thus, the issue now on appeal is whether there was cause to prohibit the Debtors from commencing another bankruptcy case during the 180 days after the order of dismissal.

Although § 1307 provides the substantive criteria for dismissal of a chapter 13 case, the effect of such dismissal is governed by § 349(a), which is made applicable to chapter 13 cases by § 103(a) of the Bankruptcy Code. It provides in pertinent part:

> (a) Unless the court, for cause orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this titled.

11 U.S.C. § 349(a). Numerous courts derive the power of the bankruptcy court to sanction serial or bad faith filers by barring future filings for reasons and longer periods of time other than those specified by § 109(g) from either § 105(a), § 349(a), or both. *See, e.g., Casse v. Key Bank Nat'l Assoc. (In re Casse)*, 198 F.3d 327 (2d Cir.1999); *In re Herrera*, 194 B.R. 178 (Bankr.N.D.Ill.1996). Section 105 of the Bankruptcy Code provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to

---

17. We do not here address what would otherwise be a typical ground for disposition of an appeal of an order granting relief from stay where the property has been sold, namely, that the appeal is moot because the debtor failed to obtain a stay pending appeal. *Anheuser–Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990). Here, one could argue that Doral's immediate sale violated the terms of Fed. R. Bankr.P. 4001(a)(3) which provides an auto-

matic 10–day stay of an order granting relief from the automatic stay "unless the Court orders otherwise." We believe that a fair reading of the transcript suggests that, by his immediate dismissal of the case and imposition of a bar to refiling, the bankruptcy judge intended that Doral complete its sale without delay. But rather than appear to have reached for that interpretation, we rely instead on our conclusion that the order granting relief from stay was proper, *ab initio*.

preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules to prevent an abuse of process.

11 U.S.C. § 105(a).

Section 109(g) provides temporal and circumstantial restrictions on debtors filing subsequent petitions within 180 days after a case was dismissed in certain circumstances, namely, where the debtor willfully failed to abide by orders of the court, or to appear before the court in proper prosecution of the case, or if the debtor voluntarily dismissed a case after the filing of a request for relief from the automatic stay. 11 U.S.C. § 109(g)(1), (2). Section 109(g), however, is not implicated in this case because the Debtors' Fourth Case was not dismissed under § 109(g).

The First Circuit Court of Appeals has not ruled on the bankruptcy court's power to prohibit debtors from filing after the dismissal of their case in circumstances where § 109(g) does not apply. The majority of circuit courts and bankruptcy courts considering this issue has ruled that the bankruptcy court has the power and authority to prohibit a serial filer from filing petitions for periods of time beyond the scope of the 180 period set forth in § 109(g) by virtue of the express provisions of §§ 349(a) and 105(a). *See, e.g., In re Casse,* 198 F.3d at 327; *Colonial Auto Center v. Tomlin (In re Tomlin),* 105 F.3d 933 (4th Cir.1997); *In re Jones,* 289 B.R. 436 (Bankr.M.D.Ala.2003); *see also In re McNichols,* 254 B.R. 422, 436 (Bankr. N.D.Ill.2000); *In re Spear,* 203 B.R. 349 (Bankr.D.Mass.1996). A minority of courts have ruled otherwise, reasoning that the bankruptcy court's power to dismiss with prejudice is circumscribed by § 109(g). *See Frieouf v. U.S. (In re Frieouf),* 938 F.2d 1099 (10th Cir.1991).

The Panel believes that the better reasoned approach is that articulated by the many courts which have ruled that the bankruptcy court has the power in an appropriate case to prohibit a serial filer from filing petitions for reasons other than lack of eligibility under § 109(g) and for periods of time exceeding 180 days. The Panel finds support for this proposition in the prefatory language in § 349(a) ("[u]nless the court, for cause orders otherwise . . ."), which gives the bankruptcy court authority to make exceptions to the general rule that the dismissal of a case is without prejudice to the filing of a subsequent petition.

The Panel concludes that the bankruptcy court did not err in ordering a 180 day ban on the Debtors' commencing another bankruptcy case because the Debtors' Fourth Case was a serial filing. The 180 day modified period, reduced from the initial one year ban, was not an unreasonable amount of time given the history of the Debtors' Third and Fourth Cases, and in particular, where the record supports the conclusion that the Fourth Case was an attempt to circumvent orders in the Third Case. The bankruptcy court was authorized to order the ban on future filings under § 105(a) to prevent an abuse of process, and under the circumstances of this case, it was justified in barring future filings by the Debtors for 180 days.

### CONCLUSION

For the foregoing reasons the orders of the bankruptcy court granting relief from stay *in rem,* authorizing Doral to conduct its sale, dismissing the Debtors' case, barring future filings for 180 days, and denying the Debtors' motion for reconsideration are **AFFIRMED.**