George L. PATTI (Debtor), Plaintiff,

v.

**FRED EHRLICH, PC,
et al., Defendants.**

Civ. A. No. 01–5362.

United States District Court,
E.D. Pennsylvania.

Jan. 8, 2003.

184

---

Jeffry B. Herman, Media, PA, for Appellant.

### MEMORANDUM AND ORDER

TUCKER, District Judge.

Presently before this Court is a bankruptcy appeal filed by Appellant/Defendant Fred Ehrlich (Doc. 3), a brief in opposition filed by Respondent/Co–Debtor Linda Camerota (Doc. 4), and a reply brief submitted by Appellant Ehrlich (Doc. 5). For the reasons set forth below, the Court denies the appeal and affirms the bankruptcy court's order of September 14, 2001.

## I. BACKGROUND

### A. Facts

On March 31, 1994, Linder Camerota, the co-debtor, retained Appellant, an attorney, to represent her in her divorce. In June 1994, Mrs. Camerota became seriously ill and decided she could no manage the divorce case against her husband. Her brother, George L. Patti, the debtor, took over management of the divorce action and assumed responsibility for paying Appellant. Appellant refused to continue representing Mrs. Camerota until he was paid for the services he had already provided. In response to this demand, Mr. Patti paid Appellant $2,000 and entered into a Stipulation of Settlement (the "Stipulation") with Appellant. The Stipulation provided that Mr. Patti would become a co-obligor with Mrs. Camerota for the outstanding legal fees owed to Appellant totaling $21,745.78. Both Mr. Patti and Mrs. Camerota signed the Stipulation.

Some time in 1995, Appellant filed suit in the Supreme Court of New York, a trial court, to recover his legal fees, naming both Mrs. Camerota and Mr. Patti as defendants.[1] The New York trial court denied cross-motions for summary judgment, and Appellant appealed the decision to the state's intermediate appellate court. While the appeal was pending, Mr. Patti filed for bankruptcy on June 17, 1998. No evidence was presented to show that state courts were notified that Mr. Patti had filed for bankruptcy protection, although Appellant was aware of the filing himself.

On June 16, 2000, Appellant's suit against Mr. Patti was discontinued. Approximately one month later, the state appeals court modified the trial court's ruling and granted summary judgment for Appellant against Mrs. Camerota and the remaining defendants. *Ehrlich v. Tullo,* 274 A.D.2d 303, 710 N.Y.S.2d 572 (N.Y.App. Div.2000). On remand, the trial court en-

---

1. Appellant also named as defendants the other named-plaintiffs to Mrs. Camerota's divorce case, to include U.S. Webb and Action Sales. Mrs. Camerota is sole shareholder of U.S. Webb and a shareholder of Action Sales. *In re Patti,* 2001 WL 1188218, at *1, 2001 Bankr.LEXIS 1267, at *3 (Bankr.E.D.Pa. 2001).

tered final judgment in favor of Appellant on October 13, 2000. These events took place while Mr. Patti's bankruptcy petition was still pending.

On April 24, 2001, the bankruptcy court dismissed Mr. Patti's case on motion of the Chapter 13 Trustee. Appellant then transferred the New York judgments to New Jersey, after which the Chapter 13 Trustee moved to vacate the dismissal. In response, Appellant filed a Motion for Determination of the Applicability of the Automatic Stay or, alternatively, Relief from the Co–Debtor Stay. On June 7, 2001, apparently after Appellant had filed the aforementioned motion, Mrs. Camerota filed a motion to vacate the New York judgments and for sanctions against Appellant. On June 13, 2001, Mr. Patti's bankruptcy was reinstated, and five days later, on June 18, 2001, the bankruptcy court granted Appellant's motion for relief.

### B. Bankruptcy Court's Ruling

The bankruptcy court denied Mrs. Camerota's motion for sanctions and to vacate the New York and New Jersey judgments. The bankruptcy court found that the New York judgments were void *ab initio* as the judgments were rendered after the bankruptcy petition was filed, in violation of the automatic co-debtor stay in effect pursuant to 11 U.S.C. § 1301(a). *In re Patti*, 2001 WL 1188218, at *7, 2001 Bankr.LEXIS 1267 at *22–23. The bankruptcy court concluded it would be superfluous to vacate what was already void. Regarding the co-debtor stay, the bankruptcy court found that Mrs. Camerota fell under its protection since she was liable for the legal fees owed Appellant, as was Mr. Patti, the debtor. By virtue of Mr. Patti filing his bankruptcy petition, both he and Mrs. Camerota, a co-debtor, were protected from any judgments rendered by a non-bankruptcy court thereafter.

As to Appellant, the bankruptcy court concluded that he had willfully violated the co-debtor stay issued by the court when he continued to prosecute his claims in the state courts. *Id.*, 2001 WL 1188218 at *7, 2001 Bankr.LEXIS 1267 at *23. The court reasoned that since Appellant knew that Mr. Patti had filed a petition for bankruptcy protection, he was under an obligation to inform the New York courts of Mr. Patti's filing and the co-debtor stay. In fact, the court concluded Appellant had an affirmative duty to seek vacation of the New York judgments. By failing to take either action, the court found Appellant had violated the co-debtor stay and he was adjudged to be in civil contempt.

### II. *DISCUSSION*

#### A. Jurisdiction and Standard of Review

Appellate jurisdiction in this matter is established pursuant to 28 U.S.C. § 158(a)(1) and Federal Rules of Bankruptcy Procedure 8001. In reviewing an appeal from a bankruptcy court, district courts apply "a clearly erroneous standard to findings of fact, while applying a *de novo* standard of review to questions of law." *Berkery v. Commissioner*, 192 B.R. 835, 837 (E.D.Pa.1996) (citing *Universal Minerals Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981)) (add'l citation omitted).

#### B. Rooker–Feldman Doctrine

The issue before this Court is whether the bankruptcy court lacked subject matter jurisdiction to issue its order finding the Appellant in civil contempt for violating the co-debtor stay, in violation of the *Rooker–Feldman* doctrine. As a general rule, lower federal courts are without power to sit in direct review of state court decisions. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483, 103

S.Ct. 1303, 75 L.Ed.2d 206 (1983). "The *Rooker/Feldman* doctrine[,] . . . derived from two Supreme Court cases decided sixty years apart, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413[, 44 S.Ct. 149, 68 L.Ed. 362] (1923), and . . . *Feldman,* [*supra,*] . . . expresses the principle that 'federal trial courts have only original subject matter, and not appellate, jurisdiction [and] . . . may not entertain appellate review of a state court judgment.' " *In re Singleton,* 230 B.R. 533, 536 (6th Cir. BAP 1999) (citation omitted). Moreover, if an issue presented to a federal court is "inextricably intertwined" with the state court's decision, and in ruling on the issue, the district court is in essence being called upon to review the state court decision, the district court is similarly without jurisdiction to consider the matter. *Feldman,* 460 U.S. at 483, 103 S.Ct. 1303. A claim is inextricably intertwined with a state court decision if the relief requested from the federal court would effectively reverse the state court or void its ruling. *In re Siskin,* 258 B.R. 554, 564 (Bankr.E.D.N.Y. 2001) (citing *In re Hatcher,* 218 B.R. 441, 447 (8th Cir. BAP 1998), *aff'd,* 175 F.3d 1024 (8th Cir.1999)). However, where a state court does not actually litigate a claim, federal courts may retain subject matter jurisdiction. *Parkview Assoc. Partnership v. City of Lebanon,* 225 F.3d 321, 325–26 (3d Cir.2000).

This principle was applied in *Goetzman v. Agribank,* 91 F.3d 1173 (8th Cir.1996), a case where the appellant-debtor motioned the bankruptcy court to determine the amount of the mortgage he owed to a creditor, Agribank. The Eighth Circuit held that the bankruptcy court was prohibited by the Rooker–Feldman doctrine from adjudicating the motion since the state trial court had already determined how much Agribank was owed by the appellant-debtor. *Id.* at 1177. Any decision by the bankruptcy court on the question of the appellant-debtor's mortgage liability would have effectively reversed or voided the state court's decision. *Id. See also In re Giberson,* 260 B.R. 78, 83 (Bankr.D.N.J. 2001) (Rooker–Feldman doctrine prohibited bankruptcy court from adjudicating ownership of property where the issue was actually litigated and finally decided in by a state court adjudicating a divorce action).

■ In the present case, the issues before the bankruptcy court differed from those at issue before the New York courts. The bankruptcy judge decided whether the nature of the debt owed by Mr. Patti to Appellant was "consumer debt" and subject to the automatic stay as to Mr. Patti and any co-debtors (here, Mrs. Camerota), and whether Appellant violated the stay during the relevant time period. The state courts addressed whether Mrs. Camerota was liable to Appellant for outstanding legal fees. The bankruptcy court did not decide this latter question, and was not therefore precluded by the Rooker–Feldman doctrine from considering whether Appellant violated the co-debtor stay by continuing to prosecute his lawsuit in the state courts once it determined the legal fees were consumer debt.

■ As to the applicability of the co-debtor stay, the New York appellate and trial courts did not entered final decisions until July and October of 2000, respectively, over two years after the co-debtor stay went into effect in June 1998. As noted above, by operation of law, any litigation against Mrs. Camerota regarding the outstanding legal fees was prohibited once the stay took effect. A "stay is 'automatic' . . . triggered upon filing of a bankruptcy petition *regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed."* *Constitution Bank v. Tubbs,* 68 F.3d 685, 691 (3d Cir. 1995) (emphasis added). Thus, the bank-

ruptcy court correctly found that the Rooker–Feldman doctrine did not apply and that any subsequent decisions issued by the New York courts were void *ab initio*.[2] *See id.* at 692 n. 6 (3d Cir.1995) ("judicial actions and proceedings against the debtor [or co-debtor] are void *ab initio* absent relief from the stay.").

## C. Bankruptcy Court's Contempt Ruling

■ A bankruptcy court may redress violations of a stay effective under the authority of 11 U.S.C. § 1301 through the power granted to it under the Bankruptcy Code. 11 U.S.C. § 105(a). Violation of a bankruptcy stay, which is an injunction with the force of an order, may give rise to civil contempt. *In re Grosse,* 84 B.R. 377, 383–84 (Bankr.E.D.Pa.1988). To establish civil contempt, a plaintiff must prove by clear and convincing evidence the following: (a) a valid order existed, (b) the defendant had knowledge of the order, and (c) the defendant disobeyed the order. *In re Lands End Leasing, Inc.,* 220 B.R. 226, 233–34 (Bankr.D.N.J.1998). A court need not find the violative conduct "willful" to hold a party in civil contempt. *Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir.1994).

■ The initial question, then, is whether a valid order existed. The answer turns on whether Mrs. Camerota was protected under the automatic stay triggered by Mr. Patti's filing for bankruptcy protection under Chapter 13. It is a generally accepted rule that the automatic stay in a bankruptcy case protects only the debtor and not parties jointly liable with the debtor, such as co-makers and guarantors. *In re Stovall,* 209 B.R. 849, 852 (Bankr.E.D.Va.1997). However, Congress created an exception for Chapter 13 filings, providing for a co-debtor stay to protect non-debtors who are jointly liable with a debtor on a consumer debt, or who secured a debtor's consumer debt. *Maritime Electric Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1205 n. 9 (3d Cir. 1991). The relevant provision provides: "A creditor may not act, commence, or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt." 11 U.S.C. § 1301(a). The co-debtor stay applies by operation of law, and takes effect once a party, jointly liable on the consumer debt, files for bankruptcy protection under chapter 13. *In re Stovall,* 209 B.R. at 852.

■ In the present case, a valid order existed. Mr. Patti filed a Chapter 13 bankruptcy petition and an automatic stay went into effect, protecting both Mr. Patti, the debtor, and Mrs. Camerota, the co-debtor, on the debt owned Appellant. The record further establishes that Appellant had full knowledge of the entry of the co-debtor stay. In fact, Appellant filed a

---

**2.** The fact that state courts have concurrent jurisdiction with bankruptcy courts to determine whether an automatic bankruptcy stay applies to the state proceedings, *see In re Singleton,* 230 B.R. at 538–39; *In re Siskin,* 258 B.R. 554, 562 (Bankr.E.D.N.Y.2001), does not change this result. The New York courts were silent on this question and did not address it. Given this silence, the bankruptcy court properly exerted jurisdiction. *See In re Singleton,* 230 B.R. at 539 (a bankruptcy court is without jurisdiction to adjudi-

cate an issue *only* where a non-bankruptcy court has previously decided the matter).

Appellant nonetheless contends that since the state courts proceeded with his lawsuit, they must have decided, apparently *sub silento,* that the co-debtor stay did not apply. Appellant further claims, in the alternative, that the law clerk of the state appeals court knew of the stay and still the case proceeded. Both claims are without merit and do not change the fact that the neither state court ruled on the relevance of the co-debtor stay.

proof of claim in the bankruptcy case. *In re Patti*, 2001 WL 1188218, at *2, 2001 Bankr.LEXIS 1267, at *8. Finally, Appellant violated the co-debtor stay by proceeding to prosecute his claim against Mrs. Camerota in the New York and New Jersey courts.

 Appellant also challenges whether the bankruptcy court properly found that the debt owned him by Ms. Camerota was "consumer" debt. The Bankruptcy Code defines consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In determining whether a debt was primarily used for personal, family, or household purposes, an inquiry should be made as to *why* the debt was incurred. *In re Straughter*, 219 B.R. 672, 681–82 (Bankr. E.D.Pa.1998). In the case of legal fees, the inquiry is the same. Classification of legal fees as consumer or non-consumer debt turns primarily on whether the legal services purchased with the legal fees was for a "personal, family, or household" matter. Legal fees incurred as a result of litigation for familial-related matters have been construed as consumer debt. *In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988); *see also In re Woerner*, 1989 WL 23763, at *2 (Bankr.E.D.Pa.1989).

In the present case, the legal fees incurred were to pay for Mrs. Camerota's representation in her divorce proceeding.[3] The purpose for the fees was therefore "personal," and the bankruptcy court properly classified the debt owed Appellant as consumer debt. Simply because some of Mrs. Camerota's business assets were involved in her divorce action does not change the nature of the proceedings or primary purpose for which Appellant was retained.

As it has been established, and Appellant does not deny, that Appellant was fully aware of the co-debtor stay effective in this case, all three elements of civil contempt were proven and the bankruptcy court properly found Appellant in violation.

### III. *CONCLUSION*

Appellant's appeal is denied and the September 14, 2001 Order issued by the bankruptcy court is hereby affirmed. As appropriate order follows.

---

3. For a complete discussion of the nature of Appellant's representation of Mrs. Camerota,

*see In re Patti*, 2001 WL 1188218, 2001 Bankr.LEXIS 1267 (Bankr.E.D.Pa.2001).