**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

**BAP NO. PR 18-064**

_____

**Bankruptcy Case No. 18-05312-ESL**

_____

**IVONNE ÁLVAREZ VÉLEZ,**
**Debtor.**

_____

**ADA M. CONDE-VIDAL,**
**Appellant,**

**v.**

**RENÉ PINTO-LUGO and**
**MYRNA LÓPEZ-GONZÁLEZ,**
**Appellees.**

_____

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Enrique S. Lamoutte, U.S. Bankruptcy Judge)**

_____

**Before**
**Bailey, Hoffman, and Finkle,**
**United States Bankruptcy Appellate Panel Judges.**

_____

**Ada M. Conde, Esq., Pro Se, on brief for Appellant.**
**Eduardo J. Mayoral, Esq., on brief for Appellees.**

_____

**July 29, 2020**

_____

**Bailey, U.S. Bankruptcy Appellate Panel Judge.**

Ada M. Conde-Vidal ("Conde"), the debtor's non-filing spouse, appeals from that portion of the bankruptcy court's December 18, 2018 order (the "Order") determining that the co-debtor stay of § 1301(a) was not applicable because the debts at issue were not consumer debts.[1] Conde's sole argument on appeal is that the bankruptcy court violated her due process rights by determining the applicability of the co-debtor stay under § 1301(a) at a hearing on a motion for relief from the automatic stay under § 362(d), without conducting a separate evidentiary hearing regarding the co-debtor stay.

For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### I. Pre-Petition Events

Conde is married to the debtor, Ivonne Álvarez Vélez (the "Debtor"), and they reside in a condominium in Miramar, Puerto Rico (the "Property"). René Pinto-Lugo and Myrna López-González (the "Pintos") live in the condominium directly below the Debtor and Conde's unit.

#### A. The Local Court Injunction Action

In December 2017, the Pintos filed in the local court a petition for injunctive relief and damages against the Debtor, Conde, and their conjugal partnership, alleging that their possession of numerous animals caused excessive noise which interfered with the Pintos' use and enjoyment of their property (the "Local Court Injunction Action").

---

[1]  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

### B.    Removal of Local Court Injunction Action and the FHAA Case

The next month, the Debtor and Conde filed a Notice of Removal, thereby removing the Local Court Injunction Action to the U.S. District Court for the District of Puerto Rico (the "Removed Case").  At the same time, the Debtor and Conde also filed a complaint in the district court against various defendants, including the Pintos, seeking a declaratory judgment and injunctive relief for alleged discrimination in violation of the Fair Housing Amendments Act (the "FHAA Case").

On August 16, 2018, the district court issued an Opinion and Order in the Removed Case concluding that it lacked subject matter jurisdiction and remanding the Removed Case back to the local court.  In the order, the district court found that the Debtor and Conde had removed the Local Court Injunction Action for the sole purpose of delaying the Local Court Injunction Action, that they had displayed "obstinate conduct," and that they had engaged in "dilatory tactics."  On the same date, the district court issued an Opinion and Order dismissing the complaint in the FHAA Case for lack of prosecution and lack of subject matter jurisdiction.  In that order, the district court similarly found that the Debtor and Conde had filed the "meritless" FHAA Case for the sole purpose of delaying the Local Court Injunction Action, and that they had displayed "obstinate conduct."

In both cases, the district court ordered the Debtor and Conde to reimburse the Pintos' attorney's fees and costs, and directed the Pintos to submit an accounting.  The district court retained jurisdiction in both matters "for the sole purpose of determining the amount of fees and costs to be awarded."

On August 31, 2018, the Pintos submitted accountings of their attorney's fees and costs in both the Removed Case and the FHAA Case as directed by the district court.  However, before

3

the district court could enter final judgments quantifying the amount of attorney's fees and costs to be paid to the Pintos in those cases, the Debtor filed her bankruptcy petition, thereby staying further proceedings in the district court.[2]

## II. The Bankruptcy Court Proceedings

### A. The Bankruptcy Filing

The Debtor filed a voluntary chapter 13 petition in September 2018. Conde did not file jointly.

#### 1. The Pintos' Proofs of Claim

The Pintos filed two proofs of claim in the Debtor's bankruptcy case. In Claim No. 10, they asserted an unsecured claim in the amount of $34,647.37, relating to the awards of attorney's fees in the FHAA and Removed Cases. In Claim No. 11, the Pintos asserted a $50,000 unsecured claim relating to the Local Court Injunction Action. No objections to the Pintos' claims were filed. These claims—one relating to the attorney's fees and costs awarded (but not yet quantified) by the district court in the FHAA and Removed Cases, and the other arising from the Pintos' unadjudicated request for damages in the Local Court Injunction Action—are the underlying debts in this appeal (collectively, the "debts").

---

[2] On November 1, 2019, well after the bankruptcy court entered the Order at issue here, the district court entered an order in both the Removed and FHAA Cases determining that Conde is "solidarily [sic] liable and responsible for the reimbursement of [the Pintos'] attorney's fees in the amount of $32,462.50, subject to a deduction of 10% for amounts which will allegedly be paid to the Pintos pursuant to Debtor Álvarez' Chapter 13 payment plan." While this appeal was pending, Conde filed her own bankruptcy case, resulting in the temporary stay of the district court order. Her bankruptcy case was dismissed in May 2020, and the stay has been lifted. The district court has since issued an Amended Order of Execution and an Amended Writ of Attachment and/or Garnishment. There is no indication in the record that a final judgment has been entered in the Local Court Injunction Action.

### 2. Chapter 13 Plan

In November 2018, the bankruptcy court confirmed the Debtor's chapter 13 plan in which she proposed to pay the trustee a total of $19,080.00 over 60 months. She indicated she would make regular payments directly to her secured creditors with any arrears to be paid through the plan. Nonpriority unsecured claimants (such as the Pintos) would only receive distributions if there were any "funds remaining after disbursements ha[d] been made to all other creditors provided for in th[e] plan."

### B. Motion for Relief from Stay under § 362(d)

On November 15, 2018, the Pintos filed a motion (the "362 Motion") seeking relief from the automatic stay under § 362(d) to allow them to: (1) obtain final determinations in the FHAA and Removed Cases as to the amount of attorney's fees and costs owed by Conde and the Debtor; and (2) continue proceedings in the Local Court Injunction Action. A few days later, the bankruptcy court issued a summons for the 362 Motion directed to the Debtor, indicating that her response was due within 14 days of service and, if she timely filed a response, there would be a hearing on December 18, 2018.

### C. Co-Debtor Stay Motion

The Pintos also filed a motion (the "Co-Debtor Stay Motion") requesting a determination that the co-debtor stay of § 1301 was inapplicable as to Conde because the debts owed to the Pintos were not consumer debts. Alternatively, the Pintos sought relief from the co-debtor stay under § 1301(c)(2), arguing that the Plan did not provide for full payment of their claims. The bankruptcy court issued summonses for the Co-Debtor Stay Motion directed to both the Debtor and Conde, indicating that responses were due within 21 days of service and warning that if they

failed to timely answer, the court would enter an order granting the motion. Unlike the summons for the 362 Motion, the summons for the Co-Debtor Stay Motion did not indicate a hearing date if responses were filed.

### D. Oppositions by the Debtor and Conde

The Debtor opposed both motions. As to the Co-Debtor Stay Motion, the Debtor argued that relief from the co-debtor stay should not be granted during the life of her chapter 13 plan because Conde contributed to her living expenses and her plan and, therefore, collection of any debt from Conde would adversely impact the Debtor and her estate. The Debtor did not address the Pintos' primary argument that § 1301(a) was inapplicable because the debts at issue were not consumer debts, except to say, in a footnote:

> "It is clear that [the Pintos'] claim is not a business claim. Consumer debt is defined at [ ] § 101(8). **The term includes legal fees incurred for a non-business purpose**. Patti v. Fred Ehrlich[, PC], 304 B.R. 182 (E.D. Pa. 2003) (state court action to collect divorce legal fees violated codebtor stay).

Nor did she address the Pintos' argument that they were entitled to relief from the co-debtor stay under § 1301(c)(2) because the Plan did not propose to pay their claims in full.

Conde filed, pro se, a "motion" joining the Debtor's opposition and acknowledging that she received service of the Co-Debtor Stay Motion and the summons.

In their oppositions to the Co-Debtor Stay Motion, neither the Debtor nor Conde requested an evidentiary hearing as to that motion.

### E. The Hearing and the Bankruptcy Court's Ruling

The bankruptcy court conducted a hearing on the 362 Motion on December 18, 2018. The Debtor and the Pintos, through their respective counsel, were present at the hearing; Conde was not.

6

During the hearing, the bankruptcy court queried whether the co-debtor stay of § 1301 was "applicable to the facts of this case and to the nature of the debt[s.]" The Debtor responded that § 1301(a) applied because the debts were not business debts. The Pintos countered that the subject debts—relating to sanctions for frivolous lawsuits and an unadjudicated request for injunctive relief and damages—were not consumer debts and, therefore, the co-debtor stay did not apply.

After hearing the parties' positions regarding the co-debtor stay, the court ruled:

> [A]s to the nature of the pending actions—that is, seeking injunctive relief regarding the noise in the apartment building, and the award of damages as a result of the dismissal—those are not the consumer debts that are envisioned in Section 1301, so I find and conclude that the . . . co-debtor stay provisions in [§] 1301 are not applicable to the non[-]filing spouse.

The bankruptcy court memorialized its ruling in the Order, which provided in its entirety:

> Court finds and concludes that under the facts of this case, [§] 1301 is not applicable; thus, the codebtor stay does not protect the non[-]filing spouse.
>
> Upon the court's statements re[garding] claims filed (POC 10 and POC 11), and in light of percentage of distribution based on confirmed plan, the debtor proffers that she does not intend to object to the claims. Debtor's counsel informs that amounts in the proof of claims correspond to what is owed as of petition date.
>
> After considering the relevant motions and arguments by counsel, the court finds that cause has not been established to lift the automatic stay under § 362(a) as to the award of attorney's fees in relation to debtor as the amount in POC #10 is not being contested. The court notes that there is no stay as to the non[-]filing spouse.
>
> In addition, the court finds that there is cause to lift the stay in favor of movants to allow injunctive relief procedures in state court to continue. Any monetary award to be channeled through bankruptcy case.

In short, the Order effectively: (1) determined that the co-debtor stay of § 1301(a) was not applicable as to Conde; (2) granted the Pintos relief from stay under § 362 to proceed with

7

the Local Court Injunction Action, with any damages awarded in that action to be "channeled through" the bankruptcy case; and (3) denied the Pintos relief from stay under § 362 to proceed against the Debtor with a final determination of the sanctions awards in the FHAA and Removed Cases.

## III.    The Appeal

Conde filed a notice of appeal on December 23, 2018 challenging the court's ruling regarding the co-debtor stay.  The Debtor did not join in the notice of appeal or file a separate notice of appeal.[3]

### POSITIONS OF THE PARTIES

Conde raises only one argument on appeal—that the bankruptcy court violated her due process rights by determining the applicability of the co-debtor stay under § 1301(a) at the hearing on the § 362 Motion without conducting a separate, evidentiary hearing on the Co-Debtor Stay Motion.  She argues that, because § 1301(d) affords co-debtors an opportunity to object to a motion for relief from the co-debtor stay under § 1301(c)(2), an evidentiary hearing is required whenever a co-debtor files such an objection.

The Pintos counter that the bankruptcy court was not required to hold an evidentiary hearing to determine the applicability of the co-debtor stay under § 1301(a).  They claim that Conde received due notice of the Co-Debtor Stay Motion and was afforded an opportunity to

---

[3]  Several events occurred during the pendency of this appeal which are worth mentioning.  The bankruptcy court denied Conde's request for a stay pending appeal.  The Pintos moved to dismiss this appeal for lack of appellate standing, which the Panel denied because the standing issue is "intertwined" with the substantive issues raised in the appeal.  Then, in October 2019, Conde filed her own chapter 13 petition.  Concluding that the automatic stay in Conde's case precluded further proceedings in this appeal, the Panel, on November 27, 2019, entered an order staying the appeal.  Conde, however, voluntarily dismissed her bankruptcy case on May 5, 2020, and the stay has been lifted.  Accordingly, this appeal is ripe for a disposition on the merits.

8

object to the Pintos' factual allegations but failed to do so. They maintain that because Conde never requested an evidentiary hearing, did not dispute any of the factual allegations asserted by the Pintos in the Co-Debtor Stay Motion, and did not present any evidence to dispute any of those factual statements, the bankruptcy court "acted within its statutory discretion to rule on the issue without an evidentiary hearing." The Pintos reiterate that Conde lacks appellate standing, a contention which Conde does not address in her appellate brief.

## APPELLATE JURISDICTION

We have jurisdiction to consider appeals from final orders of the bankruptcy court. 28 U.S.C. § 158(a)(1); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). "In the bankruptcy context, an order is final if it completely resolves all the issues pertaining to a discrete dispute within the larger proceeding." Mission Prod. Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC), 558 B.R. 500, 511 (B.A.P. 1st Cir. 2016) (citations omitted) (internal quotation marks omitted). Because the Order effectively resolved all issues between the parties regarding the applicability of the co-debtor stay under § 1301(a), it is final. See id.; see also I.R.S. v. Westberry (In re Westberry), 215 F.3d 589, 590 (6th Cir. 2000) (determining applicability of the co-debtor stay under § 1301(a) without discussing finality). Therefore, we have jurisdiction to hear this appeal.[4]

---

[4] As noted above, the Pintos continue to press that Conde, as the non-filing spouse, lacks standing to bring this appeal. While we recognize that the question of Conde's standing is not free from doubt, the First Circuit authorizes us to bypass thorny jurisdictional issues where, as here, the merits are relatively straightforward. See Giancola v. Johnsondiversey, 157 F. App'x 320, 321 (1st Cir. 2005) ("In the interests of judicial economy, we now by-pass [sic] that potentially thorny [jurisdictional] issue to reach the relatively easy merits of this appeal.") (citation omitted); see also Rivera-Martinez v. Ashcroft, 389 F.3d 207, 209 n.7 (1st Cir. 2004). Thus, we advance to a discussion of the merits.

**STANDARD OF REVIEW**

The question of "whether a party's due process rights were violated is a question of law" which is subject to de novo review. Wilson v. Desert Realty, Inc. (In re Lindsey), BAP No. NV-14-1583-KiDJu, 2016 WL 1122243, at *5 (B.A.P. 9th Cir. Mar. 21, 2016) (citing Miller v. Cardinale (In re Deville), 280 B.R. 483, 492 (B.A.P. 9th Cir. 2002)). Similarly, the question of whether a certain debt "should be considered consumer debt for purposes of . . . § 1301[ ] is a question of law, which [appellate courts] review de novo." In re Westberry, 215 F.3d at 590 (citation omitted); see also Aspen Skiing Co. v. Cherrett (In re Cherrett), 873 F.3d 1060, 1066 (9th Cir. 2017).

**DISCUSSION**

The bankruptcy court ruled that the debts at issue—one arising from the awards of attorney's fees and costs in the FHAA and Removed Cases, and the other arising from the Pintos' request for damages in the Local Court Injunction Action—were not consumer debts and, as a result, the co-debtor stay did not apply. Conde has challenged that ruling on due process grounds. We begin with the standards governing the co-debtor stay.

I.      **Applicable Standards**

A.      **The Co-Debtor Stay**

The filing of a chapter 13 petition operates to automatically stay certain proceedings against the debtor. See 11 U.S.C. § 362(a). With certain exceptions, it also serves to stay certain proceedings against co-debtors. See 11 U.S.C. § 1301(a).

Section 1301(a) establishes the co-debtor stay, providing that "a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor

10

from any individual that is liable on such debt with the debtor . . . ." 11 U.S.C. § 1301(a). Thus,

for the co-debtor stay to apply: (1) there must be an action to collect a consumer debt; (2) the

consumer debt must be one owed by the debtor; and (3) the action to collect must be against an

individual that is liable on such debt with the debtor. Smith v. Capital One Bank (USA), N.A.,

845 F.3d 256, 259 (7th Cir. 2016); Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 15

(B.A.P. 9th Cir. 2013).

### B.        Relief from the Co-Debtor Stay

A creditor may seek relief from the co-debtor stay under § 1301(c). See 11 U.S.C.

§ 1301(c). This section sets forth three alternative grounds for such relief, providing:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided by subsection (a) of this section with respect to
> a creditor, to the extent that—
>
> (1) as between the debtor and the individual protected under subsection (a) of
> this section, such individual received the consideration for the claim held by
> such creditor;
> (2) the plan filed by the debtor proposes not to pay such claim; or
> (3) such creditor's interest would be irreparably harmed by continuation of
> such stay.

11 U.S.C. § 1301(c). "[Section] 1301(c) is mandatory, stating that the court *shall* grant relief

from the stay when one of the three enumerated subsections applies." In re Schaffrath, 214 B.R.

153, 155 (B.A.P. 6th Cir. 1997).

Under § 1301(d), "creditors are afforded a streamlined procedure for obtaining relief

from the co-debtor stay" under § 1301(c)(2). Collier on Bankruptcy ¶ 1301.03[1][b] (Richard

Levin & Henry J. Sommer eds., 16th ed.) (hereinafter "Collier"). This section provides:

> Twenty days after the filing of a request under subsection (c)(2) of this section for
> relief from the stay provided by subsection (a) of this section, such stay is
> terminated with respect to the party in interest making such request, unless the
> debtor or any individual that is liable on such debt with the debtor files and serves

11

upon such party in interest a written objection to the taking of the proposed action.

11 U.S.C. § 1301(d). "The procedure set forth in subsection (d) dispenses with the necessity of obtaining a court order if neither the debtor nor codebtor, within 20 days, files and serves upon the party seeking relief a written objection to the requested relief." Collier at ¶ 1301.03[1][b]. "Unless such an objection is served and filed, the codebtor stay with respect to the party requesting relief automatically terminates." Id. If, however, an objection to the motion for relief from the co-debtor stay under § 1301(c)(2) is timely filed and served, the co-debtor stay does not automatically terminate under § 1301(d). Id. at ¶ 1301.03[1][c]. "The court must then decide after a hearing to what extent, in fact, the plan does not propose payment of the debt in question." Id.; see also 11 U.S.C. § 1301(c)(2). "This procedure applies only to motions for relief [from the co-debtor stay under] subsection 1301(c)(2)." Collier at ¶ 1301.03[1][b].

## II.     Conde's Due Process Rights Were Not Violated

We begin with Conde's sole argument on appeal—that the bankruptcy court violated her due process rights by failing to conduct a separate evidentiary hearing with respect to the Co-Debtor Stay Motion, which she claims is required under § 1301(d).

As set forth above, § 1301(d) provides that the co-debtor stay automatically terminates (without a court order) 20 days after a creditor files a request for relief from the co-debtor stay under § 1301(c)(2), unless the debtor or co-debtor objects to the requested relief. See 11 U.S.C. § 1301(d). Accordingly, if a creditor seeks relief from the co-debtor stay under § 1301(c)(2), the co-debtor is authorized to object to the requested relief. See id. Without citing any legal authority, Conde interprets § 1301(d) as *requiring* an evidentiary hearing *whenever* a co-debtor objects to a creditor's motion for relief from the co-debtor stay. According to Conde, her

12

objection to the Co-Debtor Stay Motion under § 1301(d) gave rise to a contested matter that "must be treated as an adversary proceeding" and she had a right to conduct discovery and to contest the Pintos' allegations at an evidentiary hearing.

Conde's argument is flawed insofar as it fails to take into account that the "concept of 'notice and a hearing' is a flexible one." Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006) (citations omitted). Even if the "notice and a hearing" requirement set forth in § 1301(c) for requests for relief from the co-debtor stay extends to a determination of whether the co-debtor stay is applicable under § 1301(a), "notice and a hearing" under the Bankruptcy Code does not necessarily require an actual hearing, let alone an evidentiary hearing. See 11 U.S.C. § 102(1). As the Panel has explained:

> Section 102(1)(A) of the Bankruptcy Code defines the phrase, "after notice and a hearing" to be "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." See 11 U.S.C. § 102(1)(A). Obviously, therefore, the concept of "notice and a hearing" is a flexible one. See Credit-Alliance Corp. v. Dunning-Ray Ins. Agency, Inc. (In re Blumer), 66 B.R. 109, 113 (B.A.P. 9th Cir. 1986), aff'd, 826 F.2d 1069 (9th Cir. 1987); see also L. King, Collier on Bankruptcy ¶102.02, at 102-4-5 (15th ed. rev. 2005) ("It is a concept of elastic design that may be shaped to conform to the exigency of the circumstances."). Notice does not need to be perfect; it must only be reasonable based upon the circumstances of the case. See [Davila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)], 327 B.R. [493,] 507 [B.A.P. 1st Cir. 2005)]; In re DCA Dev. Corp., 489 F.2d 43, 47 (1st Cir. 1973). Moreover, *"notice and a hearing" does not necessarily require an evidentiary hearing. Where the parties do not request an evidentiary hearing or where the core facts are not disputed, the bankruptcy court is authorized to determine contested matters, such as a motion to dismiss, on the pleadings and arguments of the parties, drawing necessary inferences from the record.* [Cabral v. Shamban (In re Cabral)], 285 B.R. [563,] 576-77 [(B.A.P. 1st Cir. 2002)]. The bankruptcy judge has considerable, albeit not unlimited, discretion in determining if the notice and hearing requirement has been satisfied. Finney v. Smith, 141 B.R. 94, 101 (E.D. Va. 1992), aff'd, 992 F.2d 43 (4th Cir. 1993).

In re Gonzalez-Ruiz, 341 B.R. at 381 (emphasis added).

"The Supreme Court has repeatedly stated that in order to satisfy due process, notice must be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present [their] objections.'" Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Here, consistent with Mullane, Conde was provided actual notice of, and an opportunity to respond to, the Co-Debtor Stay Motion. See id. She filed a response to that motion adopting, without any elaboration, the position set forth in the Debtor's opposition. In their responses to the Co-Debtor Stay Motion, neither the Debtor nor Conde disputed the underlying facts set forth therein, and Conde does not point to any factual dispute in her appellate brief. The facts set forth in the Co-Debtor Stay Motion were supported by the record, and neither the Debtor nor Conde presented any conflicting evidence to support their oppositions. Significantly, other than stating in a footnote that the Pintos' claims are not business claims, Conde did not meaningfully challenge either the Pintos' assertion that the co-debtor stay did not apply to her nor did she contest their assertion under § 1301(c)(2) that the Plan did not provide for full payment of their claims. Furthermore, the record does not reflect that either the Debtor or Conde requested a hearing, let alone an evidentiary hearing, with respect to the Co-Debtor Stay Motion. Under these circumstances, the bankruptcy court properly exercised its discretion to consider the motion "on the pleadings and arguments of the parties," without conducting a separate evidentiary hearing.[5] In re Gonzalez-Ruiz, 341 B.R. at 381.

---

[5] Moreover, contrary to her assertions in her appellate brief, the ruling at issue here was not a grant of relief from the co-debtor stay under § 1301(c)(2), but rather a determination that the co-debtor stay of § 1301(a) was inapplicable as to Conde. Because the bankruptcy court determined that the debts were not consumer debts—and the co-debtor stay was not applicable—it never reached the question of whether relief from the co-debtor stay was warranted under § 1301(c). Therefore, § 1301(c) is not applicable here. Conde offers no legal support for her position that the bankruptcy court was required to hold a separate evidentiary hearing as to the applicability of the co-debtor stay set forth in § 1301(a).

14

We turn, therefore, to a discussion of whether the bankruptcy court erred in its substantive determination that the co-debtor stay of § 1301(a) did not apply to Conde because the debts at issue were not consumer debts.

## III. The Bankruptcy Court Did Not Err in Ruling that the Co-Debtor Stay Was Not Applicable

In determining whether an action against a co-debtor is stayed by § 1301(a), "the threshold issue is whether the indebtedness in question is a consumer debt." In re Waldron, No. 85-1779-W, 1986 WL 1214946, at *1 (Bankr. S.D. Iowa Dec. 31, 1986). If the subject debt is not consumer debt, § 1301(a) does not apply. See id.

### A. Conde Does Not Challenge the Bankruptcy Court's Characterization of the Debts as Non-Consumer

On appeal, Conde does not challenge the bankruptcy court's characterization of Pintos' claims as non-consumer debts. In fact, she presents no challenge to the bankruptcy court's substantive conclusions whatsoever. Her appellate brief is completely silent on the issue.

It is well-established in this circuit that an appellant who fails to brief an issue waives it. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011); Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute waiver for purposes of appeal."). "A court is not required to overlook the procedural and substantive omissions in a party's briefing and to stitch together a cogent argument or to guess what part of the record might be relevant." Town of Hingham v. Sirikanjanachai (In re Sirikanjanachai), BAP No. MB 18-059, 2019 WL 6605858, at *3 (B.A.P. 1st Cir. Dec. 4, 2019) (citations omitted). "If a claimant cannot, or will not, attempt a succinct and cogent articulation of its claim *in its appellate brief*, it may not expect the court to supply it." Id. (quoting Albright v. F.D.I.C., 1994 WL 109047, at *4 (1st Cir. Apr. 1, 1994)). This rule

applies to pro se litigants as well.  See Aja v. Emigrant Funding Corp. (In re Aja), 442 B.R. 857,

861 (B.A.P. 1st Cir. 2011) (stating pro se litigants are not granted immunity from compliance

with procedural and substantive law)).  Moreover, as a practicing attorney, Conde presumably

has knowledge of these procedural rules.

Based on the foregoing, we conclude that Conde has waived the issue of whether the

debts at issue are consumer debts for purposes of § 1301(a).  As such, our inquiry could end here

and we could affirm on waiver grounds.  However, even if she had not waived the issue, based

on prevailing case law, we could not say that the bankruptcy court committed error when it

concluded the debts in issue were not consumer debts.

**B.      Determining Whether a Debt is Consumer Debt**

The Bankruptcy Code defines a "consumer debt" as a "debt incurred by an individual

primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).  Courts generally

construe the term "consumer debt" narrowly.[6]  In re Sijan, 611 B.R. 850, 855 (Bankr. S.D. Ohio

2020) (citing In re White, 49 B.R. 869, 872 (Bankr. W.D.N.C. 1985)).

When determining whether a debt is a consumer debt, courts usually examine the purpose

for which the debt was incurred.  See Patti, 304 B.R. at 188; see also Meyer v. Hill (In re Hill),

268 B.R. 548, 552 (B.A.P. 9th Cir. 2001).  If an individual incurred a debt with a profit motive, it

---

[6]  The term "consumer debt" is used throughout the Code.  See, e.g., 11 U.S.C. § 524(c)(6)(B) (excepting consumer debts secured by real estate from reaffirmation requirements); 11 U.S.C. § 707(b)(1) (providing for dismissal of chapter 7 cases filed by individual debtors "whose debts are primarily consumer debts" for substantial abuse); 11 U.S.C. § 523(d) (requiring court to award attorney's fees to a debtor if, without a basis that is "substantially justified," a creditor "requests a determination of dischargeability of a consumer debt under [§ 523(a)(2)]").  "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."  Bushkin v. Singer (In re Bushkin), BAP No. CC-15-1285-KiKuF, 2016 WL 4040679, at *6 (B.A.P. 9th Cir. July 22, 2016) (quoting Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932)).  Thus, in addition to those cases construing the term "consumer debt" under § 1301(a), we may consider cases construing other sections of the Code in which the term "consumer debt" is used.  See id. (citation omitted); see also Cypher Chiropractic Ctr. v. Runski (In re Runski), 102 F.3d 744, 746-47 (4th Cir. 1996).

is typically classified as a business debt, rather than a consumer debt. See, e.g., DeAngelis v. Liegey (In re Liegey), No. 1:09-bk-00661MDF, 2009 WL 3817902, at *3 (Bankr. M.D. Pa. Nov. 13, 2009); Swartz v. Strausbaugh (In re Strausbaugh), 376 B.R. 631, 637 (Bankr. S.D. Ohio 2007). However, contrary to the Debtor's assertion below (which Conde adopted), "[a]n inability to classify a particular debt as a business debt does not automatically relegate it to the status of a consumer debt." In re Marshalek, 158 B.R. 704, 708 (Bankr. N.D. Ohio 1993). "[T]here are other types of debt that are not business debts, but which also fall outside the category of consumer debt." In re Liegey, 2009 WL 3817902, at *3 n.3 (citation omitted). Courts commonly refer to debts which are neither consumer debt nor business debt as "interstitial."[7]

When determining whether a non-business debt is a consumer debt, courts often consider whether the individual voluntarily intended to incur the debt for a personal, family, or household purpose. See Marshalek, 158 B.R. at 707 ("Implicit in the Code's definition of consumer debt is the element of volition."). As one court explained, "a consumer debt is one that is 'incurred'— implying that some voluntary action is taken before a consumer becomes liable on the debt." In re Stovall, 209 B.R. at 854. Accordingly, while the action leading to the liability may have been intentional, if the debtor did not intentionally incur the debt or judgment, it will not be considered consumer debt for purposes of § 101(8). In re Kersten, No. 17-13739-7, 2018 WL 2473829, at *2 (Bankr. W.D. Wis. May 25, 2018) (citations omitted); In re Peterson, 524 B.R. at

---

[7] See, e.g., In re Peterson, 524 B.R. 808, 813 (Bankr. S.D. Ind. 2015) (stating that intentional tort claims, such as judgments arising from automobile accidents, are interstitial debts, not consumer debts); In re Stovall, 209 B.R. 849, 854 (Bankr. E.D. Va. 1997) (concluding that debt for personal property taxes is interstitial as it is neither business debt nor consumer debt). We do not concern ourselves with this nomenclature as this question is not before us. Our examination, like the bankruptcy court's, is limited to the question of whether the debts here are "consumer debts" within the meaning of § 1301.

813 (stating that although a tortious act that led to a judgment may have been undertaken voluntarily, the judgment itself was involuntarily incurred and was "not the type of debt that the Debtor would expect to incur in her daily affairs").[8]

### C. The Bankruptcy Court Did Not Err in Determining that the Pintos' Claims Are Not Consumer Debts

Here, the Pintos asserted two different claims—one arising from the award of attorney's fees and costs in the FHAA and Removed Cases, and the other arising from the Pintos' request for damages in the Local Court Injunction Action. It goes without saying that neither of these were incurred with a profit motive, thus disqualifying them as business debts. However, as discussed below, these debts also cannot be characterized as consumer debts under the Bankruptcy Code.

#### 1. The Debt Arising from Awards of Attorney's Fees in the FHAA and Removed Cases

In the Debtor's opposition to the Co-Debtor Stay Motion, which Conde joined, she asserted that the term consumer debt "includes legal fees incurred for a non-business purpose." In support, she cited Patti, 304 B.R. at 188, in which the court held that legal fees incurred by the

---

[8] This reasoning is well established in cases involving tax debts and judgments arising from automobile accidents. See In re Westberry, 215 F.3d at 591 (tax debt); In re Alvarez, 57 B.R. 65, 66 (Bankr. S.D. Fla. 1985) (tort judgment). Courts have also extended this rationale to other kinds of tort and civil judgments. See, e.g., In re Sijan, 611 B.R. at 857 (holding that debt arising from debtor's emergency medical treatment was not a consumer debt because, although "saving his life bestowed a 'personal' benefit," he did not voluntarily incur the debt); In re Peterson, 524 B.R. at 812 (ruling that intentional tort judgment based on improperly accessing medical information was not a consumer debt because it was not voluntarily incurred and was not the type of debt the debtor "would ordinarily expect to incur in her daily affairs"); In re Gorina, 296 B.R. 23, 27 (Bankr. C.D. Cal. 2002) (holding that judgment for breach of warranty in connection with the purchase of a residence was not a consumer debt); Baker v. Miller (In re Miller), 262 B.R. 499, 501 n.2 (B.A.P. 9th Cir. 2001) (stating that claims for fraud, conversion, or fiduciary breach do not constitute consumer debts); In re Izzi, 196 B.R. 727, 731 (Bankr. E.D. Pa. 1996) (stating that indebtedness arising from "tort liability" is not a consumer debt); accord Franks v. Covington (In re Franks), Adv. Pro. No. 05-1317PM, 2006 WL 5737977, at *1 (Bankr. D. Md. Jan. 13, 2006) (suggesting that tort claim filed by defendant for damage to real property was not consumer debt, but declining to decide as the issue was not raised).

18

debtor to pay for legal representation in her divorce proceeding were properly classified as consumer debt. As the court stated in Patti, "[c]lassification of legal fees as consumer or non-consumer debt turns primarily on whether the legal services purchased with the legal fees was for a 'personal, family, or household' matter." Id. Accordingly, "[l]egal fees incurred as a result of litigation for familial-related matters have been construed as consumer debt." Id. (citing Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988); Sprague, Thall & Albert v. Woerner (In re Woerner), No. 84-01980S, 1989 WL 23763, at *2 (Bankr. E.D. Pa. Mar. 17, 1989)).

In contrast, however, attorney's fees which have been imposed by a court as a sanction do not constitute "consumer debt" under the Bankruptcy Code, regardless of the nature of the action in which they were imposed. See Haeske v. Arlington (In re Arlington), 192 B.R. 494, 500 (Bankr. N.D. Ill. 1996); see also Andrews v. Indirect Purchaser Class (In re Andrews), Adv. Pro. No. 18-3070-dof, 2019 WL 3331604, at *6 (Bankr. E.D. Mich. July 23, 2019). As the Andrews court stated with respect to sanctions awards:

> "Courts historically have awarded punitive damages to punish the defendant and to deter the defendant and others from committing similar conduct in the future." In re Durant, 586 B.R. 212, 222 (Bankr. D. Md. 2018) (citations omitted). "The punishment and deterrence objectives of a punitive damages award are often necessary and very appropriate under applicable law, but differ in significant ways from a 'personal, family, or household purpose.'" Id. Thus, punitive damages do not meet the definition of consumer debt in [ ] § 101(8). Id. See also Peterson, 524 B.R. at 813 (an intentional tort judgment is an interstitial debt, not a consumer debt or a business debt).

2019 WL 3331604, at *5. Accordingly, debts that are comprised of sanctions awarded in litigation do not constitute consumer debts. Id. at *6 (ruling that sanctions award debt was neither consumer nor business debt); see also In re Durant, 586 B.R. at 222 (ruling that punitive damages award did not constitute consumer debt); James v. West (In re West), Adv. Pro. No. 16-04083-can, 2017 WL 746250, at *10 (Bankr. W.D. Mo. Feb 24, 2017) (stating that a sanctions

19

judgment was not consumer debt since the debtor "could not have voluntarily incurred the sanctions judgment").

Unlike the fees at issue in Patti, the only case cited by Conde, the attorney's fees involved in the case before us were not incurred in connection with the purchase of legal services. When awarding attorney's fees and costs to the Pintos in both the FHAA Case and the Removed Case, the district court found that the Debtor and Conde had filed the "meritless" FHAA Case and removed the Local Court Injunction Action for the sole purpose of delaying the Local Court Injunction Action, and that the Debtor and Conde repeatedly had engaged in "obstinate" conduct the court could not "condone" or "ignore." Thus, the awards of attorney's fees and costs in the FHAA and Removed Cases are properly characterized as punitive sanctions imposed against the Debtor and Conde for their improper conduct. See In re Andrews, 2019 WL 3331604, at *5.

We conclude, therefore, the bankruptcy court did not err in determining that the sanctions awards of attorney's fees in the Removed and FHAA Cases did not constitute consumer debts.

### 2. Damages Claimed in Local Court Injunction Action

Similarly, the Pintos' claim arising from their unadjudicated request for damages in the Local Court Injunction Action does not constitute consumer debt for purposes of § 1301(a). Applying the reasoning set forth in the cases described above, which we find to be persuasive, the Pintos' claim for a potential damages award in the Local Court Injunction Action is not a consumer debt as it has not been voluntarily incurred and it is not the type of debt that the Debtor would expect to incur in her daily affairs. See In re Peterson, 524 B.R. at 813. Although her use of the Property (and her ownership of numerous animals) may have been undertaken voluntarily and for a personal or family purpose, the record does not support a conclusion that she intended to incur any debt to the Pintos arising from her use of the Property. See id. It would be illogical

20

to suggest that Conde would voluntarily incur the imposition of an adverse judgment in the local court. Indeed, the litigation in that court suggests that she is resisting the entry of judgment against her. It follows, therefore, that the bankruptcy court did not err in determining that the Pintos' damages claim did not constitute consumer debt, and that the co-debtor stay of § 1301(a) did not apply.[9]

## **CONCLUSION**

Discerning no procedural or substantive error, we **AFFIRM** that portion of the Order determining that the co-debtor stay of § 1301(a) was not applicable to Conde.

---

[9] In light of its determination that the co-debtor stay of § 1301(a) did not apply to the Pintos' claims, it was unnecessary for the bankruptcy court to determine whether they were entitled to relief from the co-debtor stay under § 1301(c)(2). In re Waldron, 1986 WL 1214946, at *2 (stating that, in light of its determination that the debt was not consumer debt for purposes of § 1301(a), the court did not need to determine whether the creditor was entitled to relief from the co-debtor stay under §§ 1301(c)(2) and (d)). Therefore, that issue is not before us.

21